IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **SYSTEM ENERGY RESOURCES, INC.,** ***et al.*****,**<br><br>Plaintiffs,<br>v.<br><br>**THE UNITED STATES,**<br><br>Defendant,<br>and<br><br>**HOLTEC INTERNATIONAL, LLC,**<br><br>Intervenor. | No. 23-78C and 24-118C (Consolidated)<br><br>Judge Holte |
| **ENTERGY LOUISIANA, LLC,**<br><br>Plaintiff,<br>v.<br><br>**THE UNITED STATES,**<br><br>Defendant,<br>and<br><br>**HOLTEC INTERNATIONAL, LLC,**<br><br>Intervenor. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR LEAVE TO SUPPLEMENT THEIR MOTION TO COMPEL RCFC 30(b)(6) TESTIMONY [ECF 161] WITH DEFENDANT'S INTERROGATORY RESPONSES (PROPOSED EXHIBIT K)**

Plaintiffs System Energy Resources, Inc., Cooperative Energy, a Mississippi electric cooperative f/k/a South Mississippi Electric Power Association, and System Fuels, Inc. (collectively, the "*SERI* Plaintiffs") and Entergy Louisiana, LLC (together with the *SERI* Plaintiffs, "Plaintiffs") respectfully move, pursuant to RCFC 7(b) and the Court's authority to manage discovery, for leave to supplement their Motion to Compel RCFC 30(b)(6) Testimony [ECF 161]

(the "Motion") with Defendant's written responses to the consolidated Plaintiffs' interrogatories, attached hereto as proposed Exhibit K. In support, Plaintiffs state as follows:

## BACKGROUND

Topic No. 4 of Plaintiffs' proposed RCFC 30(b)(6) deposition seeks testimony concerning "Defendant's Responses to Plaintiffs' Interrogatories in Cause No. 23-78C and Cause No. 24-118C." [ECF 161], at 11-12. The Government contends that no DOE witness can testify regarding most of those interrogatories, either because counsel objected and provided no substantive response or because the interrogatories were contention interrogatories answered by counsel alone. *Id.*; [ECF 166], at 13-15. Plaintiffs addressed that position in their Reply. [ECF 169], at 16-17. The interrogatory responses themselves are not before the Court. Neither the Motion, Defendant's Opposition and Cross-Motion for Protective Order [ECF 166], nor Plaintiffs' Reply [ECF 169] attached them.

## GROUNDS FOR LEAVE

Plaintiffs believe that the Court will need, and likely will want, to review the interrogatory responses in deciding the Motion. The dispute over Topic No. 4 turns in part on what the Government actually said in each response: which interrogatories received a substantive answer, which drew only objections, which were deferred as contention interrogatories, and what facts, witnesses, and documents the Government identified in support of its positions. The responses allow the Court to evaluate the parties' competing characterizations against the text itself.

Plaintiffs therefore seek leave to supplement the Motion with proposed Exhibit K, which compiles the Government's interrogatory responses in effect at the time of the filing of the Motion:

(a) Defendant's Consolidated Supplemental Responses and Objections to Plaintiffs' First and Second Set of Interrogatories (No. 23-78C), dated November 12, 2025;

(b) Defendant's Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories (No. 24-118C), dated November 12, 2025; and

(c) Defendant's Consolidated Responses and Objections to the *SERI* Plaintiffs' Third Set of Interrogatories and Entergy Louisiana, LLC's Second Set of Interrogatories, dated February 13, 2026.

Supplementation will not prejudice the Government or delay resolution of the Motion. The responses are the Government's own discovery responses and are already in its possession. Plaintiffs offer them without additional argument and do not seek to enlarge the briefing, which is complete. Supplementation simply ensures that the Court has the interrogatory responses at issue when ruling.

## CERTIFICATION AND GOVERNMENT'S POSITION

In accordance with RCFC 7.3, undersigned counsel conferred with counsel for the Government on October 21, 2026, regarding the relief requested in this Motion. The Government does not oppose the Motion.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant leave to supplement their Motion to Compel RCFC 30(b)(6) Testimony [ECF 161] with proposed Exhibit K, to consider that exhibit together with the Motion, Defendant's Opposition and Cross-Motion for Protective Order [ECF 166], and Plaintiffs' Reply [ECF 169], and to grant such other and further relief as the Court deems just and proper.

THIS the 21st day of October 2026.

Respectfully submitted,

*/s/Charles E. Ross*
Charles E. Ross
**WISE CARTER CHILD & CARAWAY, P.A.**
401 East Capitol Street, Suite 600
Jackson, MS 39201
P.O. Box 651
Jackson, MS 39205-0651
(601) 968-5500
cer@wisecarter.com
*Counsel of Record for Plaintiffs System Energy Resources, Inc., Cooperative Energy, a Mississippi electric cooperative f/k/a South Mississippi Electric Power Association, and System Fuels, Inc.*

*/s/Robin F. Bromberg*
Robin F. Bromberg
**LANGLEY & BROMBERG LLC**
2700 U.S. Highway 280, Suite 350E
Birmingham, Alabama 35223
(205) 783-5752
robin@langleybromberg.com
*Counsel of Record for Plaintiff Entergy Louisiana, LLC*

**<u>OF COUNSEL</u>**
Samuel O. Morris IV
**ENTERGY SERVICES INC.**
1340 Echelon Parkway
Jackson, MS 39213
(601) 368-5476
Smorri5@entergy.com

Eric B. Langley
**LANGLEY & BROMBERG LLC**
2700 U.S. Highway 280, Suite 350E
Birmingham, Alabama 35223
(205) 783-5751
eric@langleybromberg.com

Jennifer Quinn-Barabanov
David Marcou
**STEPTOE, LLP**
1330 Connecticut Avenue NW
Washington, DC 20036
202-429-3000
jquinnba@steptoe.com
dmarcou@steptoe.com

## CERTIFICATE OF SERVICE

Pursuant to Rule 5(d)(1)(A) of the Rules of the Court of Federal Claims, I, Charles E. Ross, counsel of record for Plaintiffs System Energy Resources, Inc., Cooperative Energy, a Mississippi electric cooperative f/k/a South Mississippi Electric Power Association, and System Fuels, Inc. (hereinafter, collectively, the "*SERI* Plaintiffs"), and I, Robin F. Bromberg, counsel of record for Entergy Louisiana, LLC (along with the *SERI* Plaintiffs, collectively, the "Plaintiffs") do hereby certify that we have this date caused to be served, via electronic correspondence, a true and correct copy of Plaintiffs' sealed Unopposed Motion for Leave to Supplement Their Motion to Compel RCFC 30(b)(6) Testimony [ECF 161] with Defendant's Interrogatory Responses (Proposed Exhibit K), together with proposed Exhibit K, to the following parties in the above-styled and numbered consolidated causes and their counsel:

EVAN WISSER
Senior Trial Counsel
DANIEL FALKNOR
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Telephone: 202-616-3682
Email: evan.wisser@usdoj.gov
*Attorneys for Defendant*

William M. Sullivan, Jr.
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, D.C. 20036
202-663-8027
Fax: 703-770-7901
wsullivan@pillsburylaw.com
*Attorney for Intervenor Holtec International*

THIS the 21st day of October 2026.

Respectfully submitted,

*/s/Charles E. Ross*
Charles E. Ross
**WISE CARTER CHILD & CARAWAY, P.A.**
401 East Capitol Street, Suite 600
Jackson, MS 39201
P.O. Box 651
Jackson, MS 39205-0651
Tel: (601) 968-5500
Fax: (601) 944-7738
cer@wisecarter.com
*Counsel of Record for Plaintiffs System Energy Resources, Inc., Cooperative Energy, a Mississippi electric cooperative f/k/a South Mississippi Electric Power Association, and System Fuels, Inc.*

*/s/Robin F. Bromberg*
Robin F. Bromberg
**LANGLEY & BROMBERG LLC**
2700 U.S. Highway 280, Suite 350E
Birmingham, Alabama 35223
(205) 783-5752
robin@langleybromberg.com
*Counsel of Record for Plaintiff Entergy Louisiana, LLC*

# EXHIBIT K

Defendant's Interrogatory Responses

(Proposed Supplement to Plaintiffs' Motion to Compel RCFC 30(b)(6) Testimony, ECF 161)

System Energy Resources, Inc., et al. v. United States, Nos. 23-78C and 24-118C (Consolidated)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SYSTEM ENERGY RESOURCES, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant,<br><br>and<br><br>HOLTEC INTERNATIONAL,<br><br>Intervenor. | No. 23-78C<br>Judge Holte |

DEFENDANT'S CONSOLIDATED SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST AND SECOND SET OF INTERROGATORIES AND FIRST, SECOND, AND THIRD REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 26, 33, and of the Rules of the United States Court of Federal Claims (RCFC), and the Court's October 14, 2025 order finding as moot plaintiff's motion to compel, defendant, the United States, provides the following consolidated supplemental responses to Plaintiff's First and Second Set of Interrogatories and First, Second, and Third Set of Requests for Production of Documents. We are providing supplemental responses to the requests that were included in plaintiffs' motion to compel – Interrogatory Nos. 9, 14, 16, and 20 and Request for Production Nos. 4, 8, 10, 11, 12, 13, 14, 15, 16, and 19. As noted below, Interrogatory No. 14 is a contention interrogatory, which we will substantively supplement by November 12, 2025, pursuant to the Court's order.

# INTERROGATORIES

INTERROGATORY NO. 1:

Identify each person, not being offered as an expert, who will offer opinions within the scope of Rule 01, Federal Rules of Evidence, and provide the subject matter, substance, and basis of each such opinion.

RESPONSE:

Defendant objects to this interrogatory as premature. Defendant will provide this information in accordance with the scheduling order entered by the Court.

INTERROGATORY NO. 2:

Identify each and every person whom you will or may call as a witness at the trial of this case along with their anticipated testimony.

RESPONSE:

Defendant objects to this interrogatory as premature. Defendant will provide this information in accordance with the scheduling order entered by the Court.

INTERROGATORY NO. 3:

Identify by name, employer, job title, address, and telephone number each person known to the Government to have discoverable knowledge of any claims or defenses asserted by any party in this matter, and the subject matter of the information processed by that person.

RESPONSE:

Defendant objects to this interrogatory as a premature contention interrogatory, to which defendant cannot fully respond until the close of discovery. Without waiving this objection, defendant states that, at this time, defendant is not aware of any person in possession of

"discoverable knowledge of any claims or defenses asserted by any party in this matter" that is not already listed on plaintiff's initial disclosures provided pursuant to Rule 26.

SUPPLEMENTAL RESPONSE:

Defendant continues to defer response to this interrogatory. Defendant needs to take discovery from Entergy, Holtec, and potentially other third-parties to obtain all of the relevant facts and identify the relevant witnesses.

The United States will supplement its response to this interrogatory after the completion of fact discovery.

INTERROGATORY NO. 4:

For any and all defenses that you assert to Plaintiff's claims, please state the factual basis for such defenses; identify any and all persons having discoverable knowledge of such facts; and identify all documents reflecting such facts.

RESPONSE:

Defendant objects to this interrogatory as a premature contention interrogatory, to which defendant cannot fully respond until the close of discovery. Specifically, this interrogatory requests defendant's position regarding matters upon which defendant's expert(s) has not completed an analysis, and upon which they are expected to opine. Furthermore, defendant's position is dependent upon information that had not yet been obtained from discovery in this matter.

Without waiving these objections, our response to this interrogatory will be set forth in our expert reports in this matter. To the extent that after review of the forthcoming expert reports, plaintiff believes that they do not provide a complete response to this interrogatory, we

will provide a supplementary response within 14 days of plaintiffs' request for such supplementation.

INTERROGATORY NO. 5:

Describe in detail all spent nuclear fuel ("SNF") inspection, characterization, description, and/or verification activities that the Department of Energy ("DOE") or the Nuclear Regulatory Commission ("NRC") will require for SNF that DOE accepts from the Grand Gulf Nuclear Station ("GGNS"), for both SNF loaded into dry fuel storage and SNF residing in wet storage.

RESPONSE:

Defendant objects to this interrogatory because it is not relevant to the determination of damages arising from DOE's delay in accepting SNF beginning in 1998. In accordance with the United States Court of Appeals for the Federal Circuit decision in *Indiana Michigan Power Co. v. United States*, 422 F.3d 1369 (Fed Cir. 2005), future damages are not recoverable in a partial breach of contract case, rendering the information sought through this interrogatory irrelevant to this litigation. Defendant objects to this interrogatory as overly broad, vague, unduly burdensome, not relevant to any party's claim or defense, and not proportional to the needs of the case. Defendant further objects to this interrogatory because it seeks to have defendant make certain legal conclusions or conclusions as to the legal significance of documents and/or events that it is not required to make.

Without waiving these objections, defendant responds as follows: The Standard Contract, specifically Articles IV.A.2, VI.A, and VI.B and Appendices E and F, sets forth the requirements for inspection, characterization, description, or verification for Purchasers. In addition, in 1997, the Contracting Officer issued the Office of Civilian Radioactive Waste Management Spent Nuclear Fuel Verification Plan for Loading the SNF (SNF Verification Plan),

which further addresses verification requirements. *See* SNF Verification Plan, HRQ2760007-030. The requirements of this document are still applicable. The license for the SNF storage and disposal facilities to be constructed pursuant to the NWPA may also provide details of characterization, including inspection, description or verification activities that must be performed prior to the final disposal of SNF.

For SNF accepted from commercial reactors pursuant to the Standard Contract, DOE will require characterization, including inspection, description, and/or verification activities that are appropriate for the cask(s) chosen to accept SNF from commercial reactors and the licensed SNF storage and disposal facilities to be constructed pursuant to the NWPA. Certificates of compliance for cask systems provide descriptions and characteristics of the allowed content. Pursuant to NUREG-1536, Revision 1, *Standard of Review Plan for Spent Fuel Dry Storage Systems at a General License Facility – Final Report*, and NUREG-1617, *Standard Review Plan for Transportation Packages for Spent Nuclear Fuel*, NRC's cask license review plans require that proposed cask licenses identify fuel characteristics including, but not limited to, fuel type, enrichment, burnup, cooling time, heat load, max loading limit, fuel condition, and fuel weight.

<u>INTERROGATORY NO. 6:</u>

To the extent that your response to Interrogatory No. 5, supra, relies upon or references the Office of Civilian Radioactive Waste Management Spent Nuclear Fuel Verification Plan ("OCRWM Verification Plan"), HQR276-0007,

a. Have the "detailed procedures" been developed to implement the verification process, as stated on page 1 of the OCRWM Verification Plan?

b. Have you identified amendments to the Standard Contract that will be required as a result of modifications to the requirements outlined in the Standard Contract, as stated on page 1 of the OCRWM Verification Plan?

RESPONSE:

a. Defendant objects to this request because it is not relevant to the determination of damages arising from DOE's delay in accepting SNF beginning in 1998. In accordance with the United States Court of Appeals for the Federal Circuit's decision in *Indiana Michigan Power Co. v. United States*, 422 F.3d 1369 (Fed. Cir. 2005), future damages are not recoverable in a partial breach of contract case, rendering the information sought through this request irrelevant to this litigation.

Further, defendant objects to this interrogatory upon the grounds and to the extent that plaintiffs seek information prepared and/or developed in anticipation of litigation and/or for trial when plaintiffs have not shown that they have substantial need for such materials in preparation of their case, in that plaintiffs are unable, without undue hardship, to obtain the substantial equivalent of such information by other means. Defendant objects to this interrogatory to the extent that it requires disclosure of information or matters subject to the attorney-client privilege, the attorney work product doctrine, or other applicable privileges. Defendant also objects to this interrogatory upon the grounds, and to the extent, that plaintiffs seek to have defendant make certain legal conclusions and/or conclusions as to the legal significance of certain documents, facts, and/or events which it is not required to make.

Without waiving the foregoing objection, defendant responds that, other than the verification activities set forth in the OCRWM Verification Plan, defendant has not developed

detailed plans and/or procedures for DOE's SNF verification requirements that "will" be used when DOE begins acceptance of SNF pursuant to the Standard Contract.

b. Defendant objects to this interrogatory because it is not relevant to the determination of damages arising from DOE's delay in accepting SNF beginning in 1998. In *Systems Fuels, Inc. v. United States*, 818 F.3d 1302, 1306-07 (Fed. Cir. 2016), the United States Court of Appeals for the Federal Circuit explained that "speculation" about future modifications or amendments to the Standard Contract to allow for DOE's acceptance of canistered fuel is immaterial to resolution of a spent nuclear fuel plaintiff's claims for costs incurred for loading storage casks. Thus the information sought through this interrogatory is immaterial to resolution of plaintiffs' claims.

Defendant also objects to this interrogatory upon the grounds, and to the extent, that plaintiffs seek to have defendant make certain legal conclusions and/or conclusions as to the legal significance of certain documents, facts, and/or events which it is not required to make.

INTERROGATORY NO. 7:

Identify the specific cask(s) and ancillary equipment that DOE would have provided to GGNS pursuant to Article IV.B.2 of the Standard Contract to accept GGNS SNF if DOE had begun performance in the industry in 1998 and continued such performance through December 31, 2013, including the following:

a. Manufacturer and model;

b. Cask dimensions and location of center of gravity (loaded and empty);

c. Materials of construction;

d. All test data relating to capabilities of the cask to survive accidents and drops;

e. Capacity in number of assemblies;

f. Weight of the cask when empty;

g. Weight limit of the cask when loaded;

h. Type of closure (welded or bolted);

i. Whether the cask will be part of a consider-based system;

j. Limits on burnup of fuel that may be emplaced into the cask (if any);

k. Limits on decay heat per cask (if any);

l. Limits on partial loading of the cask (if any);

m. Types of cask impact limiters used and whether the impact limiters are integral or removable;

n. Types of personnel barriers used;

o. The type of lift yoke (if any) that will be provided;

p. The means of connection to lifting devices (e.g., trunnions and location thereof);

q. Whether the lift yoke will or will not require a stand; and

r. Other auxiliary equipment that would have been used, including vacuum drying and helium backfilling equipment, and the specifications and requirements for such equipment.

For purposes of this interrogatory, please assume that GGNS would have delivered to DOE Standard Fuel (as that term is defined in the Standard Contract). You may assume that fuel burnup would have been as high as 65 Gigawatt-days ("GWd") per metric ton of uranium ("MTU"), but that certain casks could have been loaded with fuel having burnup below 45 GWs/MTU. If you assert that you cannot identify casks because of a lack of specific information regarding fuel, even given the information above, please specifically list the fuel data that you will need to respond fully to this interrogatory and why such data are needed to respond. Please also identify the existing mechanism(s), if any, in the Standard Contract that call(s) for

Purchasers under the Standard Contract to provide that information to DOE, and identify each communication to the Purchasers that requested that such information be provided to DOE.

RESPONSE:

Defendant objects to the portion of the interrogatory that seeks information on the "limits on burnup of fuel that may be placed in the cask (if any)," the "limits on decay heat per cask (if any)," and the "limits on partial loading of the cask (if any)" as overly broad, vague, unduly burdensome, not relevant to any party's claim or defense, and not proportional to the needs of the case. The claims and defenses advanced in this litigation do not require knowledge of the limits of fuel burnup, limits on decay heat per cask, or limits on partial loading of the cask for the cask(s) DOE would have provided to GGNS had DOE begun performance in 1998. Defendant objects to the portion of the interrogatory that seeks information on "each communication to the Purchasers" as vague as to the term "communication" and as overbroad to the extent it requests communications from utilities other than the owner(s) of GGNS.

Without waiving these objections, defendant responds as follows: Pursuant to the Standard Contract, DOE was obligated to and would have provided a cask that was "suitable for use" at the Grand Gulf plant. Standard Contract, Art. IV.B.2. Based upon surveys that DOE performed in planning for transportation of SNF, a large rail cask would have been "suitable for use" at the Grand Gulf plant. Facility Interface Capability Assessment (FICA) Project, Cask-Handling Assessment, Grand Gulf Nuclear Station, May 1990, MOV.19980306.0078 (May 1990 FICA Report), HQR830000001-039; *see also* Facility Interface Capability Assessment (FICA) Project, Draft Cask-Handling Assessment, Grand Gulf Nuclear Station, March 1990, SSM001 0048-65. According to DOE's survey, Grand Gulf could have handled a cask with a maximum

weight of 125 tons, a maximum length of 27 feet, 3 inches and a maximum diameter of 12 feet. May 1990 FICA Report at 10. The cask supplied would have used a bolted closure.

To the extent this interrogatory requests the Government's position at trial, while DOE does not know the specific cask(s) that it would have provided to GGNS, it is appropriate to assume that a cask similar in design and features to the GA-9 cask for shipment by truck and a BR-100 cask for shipment by rail or barge would have been brought by DOE to the site.
The cask DOE would have supplied would have required the use of cask impact limiters for transportation. As noted above, defendant is unaware of the different "types of cask impact limiters" to which plaintiffs may be referring. If plaintiffs are simply making a distinction between "integral" or "removable" impact limiters, defendant responds that the cask limiters would have been removable.

As required by the Standard Contract, DOE would have provided ancillary equipment with the transportation cask. Standard Contract, Art. IV.B.2(c). This ancillary equipment would have included cask drying equipment and a lift yoke, if a lift yoke was necessary for the cask supplied. DOE would not have provided a lift yoke stand because the need for a lift yoke stand would have been determined by the needs of the specific plant. If a plant needed to install a lift yoke stand, DOE would have provided the drawings to the plant so that the appropriate stand could be designed and constructed by the utility.

The existing mechanisms in the Standard Contract require the Purchasers to provide spent nuclear fuel data and are found in Article IV.A.1 and 2(b), and Article V.B and C, and associated Appendices. Pursuant to Article IV.A.1, DOE sent a general letter to all Purchasers requesting the RW-859/GC-859 Nuclear Fuel Survey data each time a new survey period was initiated.

DOE and individual Purchasers had phone conversations and email communications to resolve any questions about the data submitted to DOE.

INTERROGATORY NO. 8:

Please identify each of the activities involved in handling, loading, closing, and transferring to the dry storage facility, the dry storage canisters and casks at GGNS that you contend are not recoverable "loading" costs addressed by the Federal Circuit's decision in *Sys. Fuels, Inc. v. United States*, 818 F.3d 1302 (Fed. Cir. 2016).

RESPONSE:

Defendant objects to this interrogatory upon the grounds, and to the extent, that plaintiffs seek to have defendant make certain legal conclusions and/or conclusions as to the legal significance of certain documents, facts, and/or events which it is not required to make. Defendant further objects to this interrogatory upon the grounds and to the extent that plaintiffs seek information prepared and/or developed in anticipation of litigation and/or for trial when plaintiffs have not shown that they have substantial need for such materials in preparation of their case in that plaintiffs are unable, without undue hardship, to obtain the substantial equivalent of such information by other means. Defendant also objects to this interrogatory to the extent that it requires disclosure of information or matters subject to the attorney-client privilege, the attorney work product doctrine, or other applicable privileges.

Finally, defendant objects to this interrogatory as a premature contention interrogatory, to which defendant cannot fully respond until the close of discovery. Specifically, plaintiffs' interrogatory requests defendant's position with regard to matters upon which defendant's expert(s) has not completed his/her analysis, and upon which he/she is expected to opine. In

addition, defendant's position is partially dependent upon information that has not yet been obtained from discovery in this matter.

Without waiving the foregoing objections, our response to this interrogatory will be set forth in our expert reports in this matter. To the extent that the forthcoming expert reports do not provide a complete response to this interrogatory, we will provide a supplementary response within 14 days of plaintiffs' request for such supplementation.

INTERROGATORY NO. 9:

Please specifically identify any "documents produced or filed in prior cases . . . [and] any transcripts of proceedings or depositions taken in connection with those cases" that you intend to rely on in this action as set forth in your Initial Disclosures.

RESPONSE:

Because this contention interrogatory seeks information requiring legal conclusions and expert analysis and testimony, defendant objects to this request as premature and expressly reserves the right to supplement, clarify, revise, or correct its response to this request, and to assert additional objections or privileges, in one or more subsequent supplemental response(s) in accordance with the time period for exchanging expert reports set by the Court and pursuant to RCFC 26. Notwithstanding these objections, defendant expects that its expert reports will adequately respond to this interrogatory. To the extent that the forthcoming expert reports do not provide a complete response to this interrogatory, we will provide a supplementary response within 14 days of plaintiffs' request for such supplementation.

SUPPLEMENTAL RESPONSE:

Defendant stands on its prior response and continues to defer its response to this interrogatory. At this time, Defendant has not identified any specific documents produced or

filed in prior cases or transcripts of proceedings or depositions taken in connection with those cases that Defendant intends to rely on in this action. Defendant will supplement this disclosure if Defendant identifies such documents during discovery. At a minimum, Defendant will disclose the documents (including any transcripts of prior proceedings and depositions) it intends to rely on at trial to support its defenses in accordance with the standard pretrial schedule set forth in Appendix A of the Court's rules.

<u>10/28/2025 SUPPLEMENTAL RESPONSE:</u>

The United States identified and produced one document responsive to this request on September 4, 2025. In addition, based on the Court's statements at the October 14, 2025 status conference regarding the scope of discoverable and potentially admissible evidence in this case, the United States has possession of documents produced by Holtec in *Holtec Pilgrim, LLC v. United States*, Fed. Cl. No. 22-771 (consolidated with *NStar Electric Co. v. United States*, Fed. Cl. No. 20-529) that are responsive to this request. Those documents can only be produced pursuant to the requirements of the protective order entered in that case. The United States is compiling a list of Bates ranges responsive to this request which we will provide to counsel for Holtec on October 31, 2025. At that point, Holtec will need to determine whether it will consent or object to the production. If Holtec objects, the United States, plaintiffs, or both may need to consider further filings in this case as contemplated by the relevant protective order to facilitate identification and production of the responsive documents.

<u>INTERROGATORY NO. 10:</u>

Please identify any specific "documents [you] produced in the coordinated discovery proceedings or in response to numerous requests for production from the nuclear utility plaintiffs

in other SNF cases" that you intend to rely on in this action as set forth in your Initial Disclosures.

RESPONSE:

Because this contention interrogatory seeks information requiring legal conclusions and expert analysis and testimony, defendant objects to this request as premature and expressly reserves the right to supplement, clarify, revise, or correct its response to this request, and to assert additional objections or privileges, in one or more subsequent supplemental response(s) in accordance with the time period for exchanging expert reports set by the Court and pursuant to RCFC 26. Notwithstanding these objections, defendant expects that its expert reports will adequately respond to this interrogatory. To the extent that the forthcoming expert reports do not provide a complete response to this interrogatory, we will provide a supplementary response within 14 days of plaintiffs' request for such supplementation.

SUPPLEMENTAL RESPONSE:

Defendant stands on its prior response and continues to defer response to this interrogatory. At this time, Defendant has not identified any specific documents produced by the United States in other SNF cases that Defendant intends to rely on in this action. Defendant will supplement this disclosure if Defendant identifies such documents during discovery. At a minimum, Defendant will disclose the documents it intends to rely on at trial to support its defenses in accordance with the standard pretrial schedule set forth in Appendix A of the Court's rules.

INTERROGATORY NO. 11:

Please specifically identify any publicly available documents you intend to rely upon in this action as set forth in your Initial Disclosures.

RESPONSE:

Because this contention interrogatory seeks information requiring legal conclusions and expert analysis and testimony, defendant objects to this request as premature and expressly reserves the right to supplement, clarify, revise, or correct its response to this request, and to assert additional objections or privileges, in one or more subsequent supplemental response(s) in accordance with the time period for exchanging expert reports set by the Court and pursuant to RCFC 26. Notwithstanding these objections, defendant expects that its expert reports will adequately respond to this interrogatory. To the extent that the forthcoming expert reports do not provide a complete response to this interrogatory, we will provide a supplementary response within 14 days of plaintiffs' request for such supplementation.

SUPPLEMENTAL RESPONSE:

Defendant stands on its prior response and continues to defer response to this interrogatory. At this time, Defendant has not identified any specific public documents that Defendant intends to rely on in this action. Defendant will supplement this disclosure if Defendant identifies such documents during discovery. At a minimum, Defendant will disclose the documents it intends to rely on at trial to support its defenses in accordance with the standard pretrial schedule set forth in Appendix A of the Court's rules.

INTERROGATORY NO. 12:

Please specifically identify any costs for which Plaintiffs seek recovery in this action (as identified in Plaintiffs' Initial Disclosures) that you contend would have been incurred by Plaintiffs even if the Government had fully performed its contractual obligations under the Standard Contract and state in detail the factual basis for any such contention.

RESPONSE:

Defendant objects to this interrogatory as a premature contention interrogatory, to which defendant cannot fully respond until the close of discovery. Specifically, this interrogatory requests defendant's position regarding matters upon which defendant's expert(s) had not completed an analysis, and upon which they are expected to opine. Furthermore, defendant's position is dependent upon information that has not yet been obtained from discovery in this matter.

Without waiving these objections, our response to this interrogatory will be set forth in our expert reports in this matter. To the extent that after review of the forthcoming expert reports, plaintiff believes that they do not provide a complete response to this interrogatory, we will provide a supplementary response within 14 days of plaintiffs' request for such supplementation.

INTERROGATORY NO. 13:

If you dispute the amount of any additional costs or damages sustained by Plaintiffs as a result of the Government's breach of the Standard Contract (as set forth in Plaintiffs' Initial Disclosures), specifically identify any such costs or damages and state in detail the factual basis for your disagreement.

RESPONSE:

Defendant objects to this interrogatory as a premature contention interrogatory, to which defendant cannot fully respond until the close of discovery. Specifically, this interrogatory requests defendant's position regarding matters upon which defendant's expert(s) had not completed an analysis, and upon which they are expected to opine. Furthermore, defendant's

position is dependent upon information that has not yet been obtained from discovery in this matter.

Without waiving these objections, our response to this interrogatory will be set forth in our expert reports in this matter. To the extent that after review of the forthcoming expert reports, plaintiff believes that they do not provide a complete response to this interrogatory, we will provide a supplementary response within 14 days of plaintiffs' request for such supplementation.

INTERROGATORY NO. 14:

To the extent Defendant contends that the costs paid by Plaintiff during the Claim Period for goods and services related to spent nuclear fuel management and storage at the Grand Gulf Nuclear Plant (including, but not limited to, those provided by Holtec International, Inc.) were unreasonable, please explain in detail the factual basis for such contention including the identification of all documents supporting the underlying factual basis for the Government's position.

RESPONSE:

Defendant defers response to this interrogatory. This is a contention interrogatory, asking the Defendant to identify facts supporting its legal contentions. The relevant facts are not known by any witnesses under the control of the United States, nor are they supported by any documents in the United States' possession custody or control. The relevant facts are known by Entergy, Holtec, and potentially other third-parties, supported by documents in the possession, custody, or control of those parties. Defendant needs to take discovery from Entergy, Holtec, and potentially other third-parties in order to obtain all of the relevant facts. Only then will

Defendant be in a position to assess the facts learned through discovery and determine which are relevant to Defendant's legal contentions.

The United States will supplement its response to this interrogatory after the completion of fact discovery.

SUPPLEMENTAL RESPONSE:

Notwithstanding the above objections, the United States provides this response based on our preliminary review of the discovery produced to-date by plaintiffs. The United States reserves the right to supplement this response at the end of discovery. The United States has identified the following costs that it may dispute at trial:

- Costs paid by Entergy to Holtec for spent nuclear fuel management at Grand Gulf. Based on the discovery produced to-date, *i.e.* Mr. Gears' deposition testimony and exhibits, it appears that Entergy may have had reasons for acceding to the prices proposed by Holtec that either were not caused by DOE's breach or were not a foreseeable consequence of DOE's breach. Alternatively, Entergy's decision to accede to the prices proposed by Holtec was not a reasonable mitigation in the context of the information available to Entergy at the time.
- Entergy's material loader costs. Based on the discovery produced to-date, Entergy has not provided a basis to support the material loader rates included in its claimed costs.
- Costs unrelated to DOE's breach. Based on the discovery produced to-date, the United States anticipates contending that at least the following activities were not caused by DOE's breach but were the result of ordinary nuclear plant management and would have been incurred even if DOE had performed. Thus some or all of the costs associated with these activities are not recoverable by plaintiffs: fuel sipping, security, combo shop

renovations, refuel office renovations, delays, crane maintenance, equipment and materials, expediting fees, fleet-wide DFS manager.

<u>10/28/2025 SUPPLEMENTAL RESPONSE:</u>

This is a contention interrogatory, and pursuant to the Court's October 14, 2025 order the United States will provide a further supplement to this response on November 12, 2025.

**<u>11/12 SUPLEMENTAL REPSONSE:</u>**

Notwithstanding the above objections, the United States provides this further updated response based on our continued review of the ongoing discovery produced to-date by plaintiffs. The United States reserves the right to supplement this response at the end of discovery. The United States has identified the following costs that it may dispute at trial:

- Costs paid by Entergy to Holtec for spent nuclear fuel management at Grand Gulf. Based on the discovery produced to-date, *i.e.* Mr. Gears' deposition testimony and exhibits, it appears that Entergy may have had reasons for acceding to the prices proposed by Holtec that either were not caused by DOE's breach or were not a foreseeable consequence of DOE's breach. Alternatively, Entergy's decision to accede to the prices proposed by Holtec was not a reasonable mitigation in the context of the information available to Entergy at the time.
- Entergy's material loader costs. Based on the discovery produced to date, Entergy has not provided sufficient documentation or explanation to support the material loader rates included in its claimed costs. The United States therefore anticipates contending that these rates do not reflect incremental costs attributable to DOE's partial breach.
- Costs unrelated to DOE's breach. Based on the discovery produced to date, including the depositions of Grand Gulf personnel Tina Allen, R. Marsh Nippes, Kathryn Marshall and

Jonathan Beckman, the United States anticipates contending that certain claimed activities were not caused by DOE's partial breach but were instead the result of ordinary nuclear plant management and would have been incurred even if DOE had performed. Accordingly, some or all of the costs associated with these activities are not recoverable by Plaintiffs. These activities include, but are not limited to: fuel sipping, security, combo shop renovations, refuel office renovations, delays, crane maintenance, equipment and materials, expediting fees, and allocated fleet-wide DFS manager costs.

The United States will supplement its response as additional information becomes available or as expert analysis is provided.

INTERROGATORY NO. 15:

Please identify in detail which components of Plaintiff's damages claim seeking reimbursement for costs paid by Plaintiff to Holtec International, Inc. that Defendant contends to be unreasonable (referencing and identifying specific work orders and portions of Plaintiff's Cost Report submitted with Plaintiff's Initial Disclosures).

RESPONSE:

Defendant defers response to this interrogatory. Defendant anticipates that its expert reports will contain a comprehensive accounting of the disputed costs.

INTERROGATORY NO. 16:

Please explain in detail how DOE assesses or evaluates proposals or estimates submitted by contractors and vendors for spent fuel storage and management goods and services at DOE and DOE-managed spent nuclear fuel storage sites and facilities.

RESPONSE:

Defendant objects to this interrogatory. The information sought is not relevant to any party's claim or defense. The issue presented in this case is whether the costs claimed by Entergy relating to expenses incurred at Grand Gulf Nuclear Station are recoverable as contract damages under the relevant legal standards. To the extent DOE's actions to manage spent nuclear fuel were considered as part of Entergy's contemporaneous decision-making process, Entergy is obligated to disclose that fact and produce the relevant documents in its possession, custody, or control relating to DOE's actions that informed its decision. Entergy has made no such assertion. Thus, DOE's actions are not relevant to any party's claim or defense.

10/28/2025 SUPPLEMENTAL RESPONSE:

As stated previously, DOE's process for executing contracts is fully documented in the Federal Acquisition Regulations, Title 48 of the Code or Federal Regulations. Plaintiffs' have previously indicated that this interrogatory also seeks information about the ways in which DOE practice deviates from FAR requirements. Defendant is not currently aware of any deviations from FAR requirements in connection with DOE's contracting activities related to its own spent nuclear fuel management. Indeed, any such deviation from FAR requirements would be unlawful. The Department of Energy is collecting related documents responsive to plaintiffs' Request for Production Nos. 10 and 11. After reviewing those documents, Defendant will re-review this interrogatory response to determine if any further supplement is necessary.

**11/12/2025 SUPPLEMENTAL RESPONSE:**

After undertaking the document searches described in our 10/28/2025 supplemental response, the United States has confirmed that it has no knowledge of the procurement processes described in this interrogatory. The DOE sites identified in this request are managed by external

contractors. Those contractors are responsible for procuring and executing all of the spent fuel management work described in this request, and those contractors maintain all of the records related to the work described in this request.

The United States has no documents to produce in response to this request.

INTERROGATORY NO. 17:

Please provide in detail the factual basis, including identify all documents supporting the factual basis, if any, for Defendant's allegation that Plaintiffs [redacted], [redacted] during or prior to the negotiation of the new Holtec GSA at issue in this case.

RESPONSE:

Defendant refers preliminarily to the testimony from Mr. Gears' May 2, 2025 deposition and the exhibits 11, 12, 13, and 14 from that deposition. Defendant defers further response to this interrogatory and reserves the right to supplement this response as discovery is ongoing. This is a contention interrogatory, asking the Defendant to identify facts supporting its legal contentions. The relevant facts are not known by any witnesses under the control of the United States, nor are they supported by any documents in the United States' possession custody or control. The relevant facts are known by Entergy, Holtec, and potentially other third-parties, supported by documents in the possession, custody, or control of those parties. Defendant needs to take discovery from Entergy, Holtec, and potentially other third-parties in order to obtain all of the relevant facts.

The United States will supplement its response to this interrogatory after the completion of fact discovery.

INTERROGATORY NO. 18:

Please provide in detail the factual basis, and identify any documents supporting the factual basis, if any, for Defendant's allegations that Plaintiffs, acquiesced to any provision in Holtec's new fleet GSA, or that such commercial transaction was not the result of an arm's length negotiation.

RESPONSE:

Defendant refers preliminarily to the testimony from Mr. Gears' May 2, 2025 deposition and the exhibits from that deposition. Defendant defers further response to this interrogatory and reserves the right to supplement this response as discovery is ongoing. This is a contention interrogatory, asking the Defendant to identify facts supporting its legal contentions. The relevant facts are not known by any witnesses under the control of the United States, nor are they supported by any documents in the United States' possession custody or control. The relevant facts are known by Entergy, Holtec, and potentially other third-parties, supported by documents in the possession, custody, or control of those parties. Defendant needs to take discovery from Entergy, Holtec, and potentially other third-parties in order to obtain all of the relevant facts.

The United States will supplement its response to this interrogatory after the completion of fact discovery.

INTERROGATORY NO. 19:

If Defendant is claiming or intends to claim any offsets to the amount of damages awarded to plaintiffs, please state in detail the nature of the offset, the amount of the offset, the methodology of computing the offset, and the identification of any documents supporting such claimed offset.

RESPONSE:

Defendant defers response to this interrogatory. Defendant is still evaluating Plaintiffs' claims and has not yet made a final decision about whether Defendant will assert any potential offsets to the claimed damages. Defendant will make that decision at the time it produces expert reports, and Defendant will provide a supplement to this response at that time.

INTERROGATORY NO. 20:

Are any nuclear power owners under the Defendant's uniform settlement program making claims for Holtec costs relating to spent fuel management services including, but not limited to, the cost to purchase of casks, ancillary equipment, and performance of loading services? If so, and without identifying the particular settling party, identify in detail for each settling party the claimed costs reimbursed by the Defendant. A complete answer should identify the capacity of the purchased casks, the incremental costs per cask, any services included in the per cask cost, the type and cost of individual ancillary equipment, and number of casks loader per campaign for which costs are claimed by the settling party.

RESPONSE:

Defendant objects to this interrogatory. The information sought is not relevant to any party's claim or defense. The issue presented in this case is whether the costs claimed by Entergy relating to expenses incurred at Grand Gulf Nuclear Station are recoverable as contract damages under the relevant legal standards. To the extent that DOE's reimbursements for spent nuclear fuel at other nuclear plants were considered as part of Entergy's contemporaneous decision-making process, Entergy is obligated to disclose that fact and produce the relevant documents in its possession, custody, or control relating to DOE's actions that informed its decision. Entergy has made no such assertion. Thus, DOE's actions are not relevant to any party's claim or defense.

<u>10/28/2025 SUPPLEMENTAL RESPONSE:</u>

Yes, nuclear utilities that have executed settlement agreements with the Department of Energy to resolve claims under the Standard Contract have made claims for costs paid to Holtec for spent nuclear fuel management services. Defendant is currently reviewing and organizing DOE's claim records to identify relevant costs responsive to this request. Defendant will provide an update on the time required to provide a substantive response to this request in the November 12, 2025 status report required by the Court's October 14, 2025 order.

As explained in the parties' October 24, 2025 call, a complete response to this interrogatory would require disclosure of the proprietary and confidential information presented to DOE by the utility claimants. Disclosure of this information is prohibited pursuant to the Trade Secrets Act, 18 U.S.C. § 1905, except as authorized by law. *See generally Chrysler Corp. v. Brown*, 441 U.S. 281, 294-316 (1979). The Court of Federal Claims has recognized that the United States may not be permitted to disclose third-party confidential information in response to discovery requests, at least without a Court order. *See*, *e.g.*, *Vanda Pharms., Inc. v. United States*, 174 Fed. Cl. 513, 519 (2025); *Standard Space Platforms Corp. v. United States*, 35 Fed. Cl. 505, 507-08 (1996). In addition, the parties that originally provided this information may have a right to seek intervention in this matter before the United States produces responsive information in discovery, as Holtec has already done. *See*, *e.g.*, Armour of Am. v. United States, 70 Fed. Cl. 240, 242-43 (2006); *Int'l Graphics, Div. of Moore Bus. Forms, Inc. v. United States*, 3 Cl. Ct. 715, 717 n.3 (1983).

For these reasons, before filing the November 12, 2025 status report, the United States intends to provide notice to the entities whose confidential information may need to be disclosed in order to fully respond to this interrogatory. The United States will not provide a response

absent affirmative consent from those parties or an explicit Court order permitting the United States to provide a response.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ENTERGY LOUISIANA, LLC.<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant,<br>and<br>HOLTEC INTERNATIONAL,<br>Intervenor. | No. 24-118C<br>Judge Holte |

DEFENDANT'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, provides the following supplemental responses to Plaintiff's First Set of Interrogatories.

INTERROGATORY NO. 1:

To the extent Defendant alleges that the costs paid by Plaintiff during the Claim Period for goods and services related to spent nuclear fuel management and storage at the Waterford 3 plant (including, but not limited to, those provided by Holtec International, Inc.) may have been unreasonable, please explain in detail and identify all documents supporting the underlying factual basis for such allegation. Include in your response the specific Holtec costs the Government believes may have been **unreasonable** and the specific Holtec costs the Government believes **are** reasonable.

RESPONSE:

Defendant defers response to this interrogatory. This is a contention interrogatory, asking the Defendant to identify facts supporting its legal contentions. The relevant facts are not known by any witnesses under the control of the United States, nor are they supported by any documents in the United States' possession custody or control. The relevant facts are known by Entergy, Holtec, and potentially other third-parties, supported by documents in the possession, custody, or control of those parties. Defendant needs to take discovery from Entergy, Holtec, and potentially other third-parties in order to obtain all of the relevant facts. Only then will Defendant be in a position to assess the facts learned through discovery and determine which are relevant to Defendant's legal contentions.

The United States will supplement its response to this interrogatory after the completion of fact discovery.

**11/12/25 SUPPLEMENTAL REPSONSE:**

Notwithstanding the above objections, the United States provides this supplemental response based on our preliminary review of the discovery produced to-date by plaintiffs. The United States reserves the right to supplement this response at the end of discovery. The United States has identified the following costs that it may dispute at trial:

- Costs paid by Entergy to Holtec for spent nuclear fuel management at Waterford. Based on the discovery produced to-date, i.e. Mr. Gears' deposition testimony and exhibits, it appears that Entergy may have had reasons for acceding to the prices proposed by Holtec that either were not caused by DOE's breach or were not a foreseeable consequence of DOE's breach. Alternatively, Entergy's decision to accede to the prices proposed by Holtec was not a reasonable mitigation in the context of the information available to Entergy at the time.

- Costs unrelated to DOE's breach. Based on the discovery produced to date, including the depositions of Waterford 3 personnel Renetta Deroche, Joseph Coss, and Alyxandria Wszolek, the United States anticipates contending that certain claimed activities were not caused by DOE's partial breach but were instead the result of ordinary nuclear plant management and would have been incurred even if DOE had performed. Accordingly, some or all of the costs associated with these activities are not recoverable by Plaintiffs. These activities include, but are not limited to: capital suspense costs, delays, crane maintenance, equipment and materials, expediting fees, and allocated fleet-wide DFS manager costs.

The United States will supplement its response as additional information becomes available or as expert analysis is provided.

INTERROGATORY NO. 2:

Please explain in detail how Defendant assesses or evaluates proposals or estimates submitted by contractors and vendors for spent fuel storage and management goods and services at DOE and DOE-managed spent nuclear fuel storage sites, and identify any document that provides guidance, instructions or requirements with respect to the evaluation of such proposals or estimates.

RESPONSE:

Defendant objects to this interrogatory. The information sought is not relevant to any party's claim or defense. The issue presented in this case is whether the costs claimed by Entergy relating to expenses incurred at Waterford Nuclear Generating Station are recoverable as contract damages under the relevant legal standards. To the extent DOE's actions to manage spent nuclear fuel were considered as part of Entergy's contemporaneous decision-making

process, Entergy is obligated to disclose that fact and produce the relevant documents in its possession, custody, or control relating to DOE's actions that informed its decision. Entergy has made no such assertion. Thus, DOE's actions are not relevant to any party's claim or defense.

INTERROGATORY NO. 3:

Please identify all "information Defendant has received to-date" which has caused it to develop "substantial concerns about the recoverability of the claimed costs that were paid to Holtec International and its subsidiaries…" and which Plaintiff is claiming as damages in this case. *See* March 27 Joint Status Report, Doc. 19, at p. 8. ("Based on the information we have received to-date, we have developed substantial concerns about the recoverability of the claimed costs that were paid to Holtec International and its subsidiaries, which represent over 60% of the direct costs plaintiff is claiming and roughly 55% of the overall claim.").

RESPONSE:

Defendant refers to the testimony from Mr. Gears' May 2, 2025 deposition and the exhibits from that deposition. Mr. Gears' testimony corroborated Defendants' understanding of the documents produced by Entergy, which indicated that the prices charged by Holtec and included in Entergy Louisiana's claim were unsupportably high. Defendant reserves the right to supplement this response as discovery is ongoing.

INTERROGATORY NO. 4:

In the parties' March 27, 2025 joint status report, Defendant states, "Because Entergy has essentially subcontracted with Holtec to participate in nearly all the spent fuel management work at issue here, we must seek discovery related to Holtec's services and justification for its costs and prices charged in the present case, as well as Entergy's knowledge and acquiescence in Holtec's prices." *See* March 27 Joint Status Report, Doc. 19, at p. 8. To the extent Defendant

alleges: (1) that the "costs and prices charged in the present case" by Holtec were unreasonable; and (2) that Entergy had "knowledge and acquiesce[d] in Holtec's prices," please explain in detail the factual basis for said allegations specifically including identification of facts and documents that support your allegation that Plaintiff had "knowledge and acquiesce[d]" to Holtec's prices.

RESPONSE:

Defendant refers to the testimony from Mr. Gears' May 2, 2025 deposition and the exhibits from that deposition. Mr. Gears' testimony corroborated Defendants' understanding of the documents produced by Entergy, which indicated that the prices charged by Holtec and included in Entergy Louisiana's claim were unsupportably high and that Entergy had knowledge and acquiesced to Holtec's prices. Defendant reserves the right to supplement this response as discovery is ongoing.

INTERROGATORY NO. 5:

In the parties' March 27, 2025 Joint Status Report, the Government wrote that:

> On January 13, 2025, the Government conferred via email regarding its position on settlement, stating:
>
> > …There are pending damage-related matters under seal before the Court in another spent fuel case that impact our position in this case. Therefore, the Government is unable to take a position on settlement in *Entergy Louisiana* at this time. The matters under seal are scheduled for oral argument on January 30, 2025. We hope that after that hearing, we will be able to provide additional information.
>
> ….
>
> On January 30, 2025, argument on the Government's motion to amend was held in the NStar case. The motion was denied without prejudice. While the court kept the proposed amendment under seal, it did unseal **the underlying information supporting the proposed amendment.**

March 27 Joint Status Report, Doc. 19, at p. 4 (emphasis added). Please (i): identify what the "underlying information" is that is referenced in the above-quoted language from the Joint Status Report; and (2) explain in detail what facts related to the "underlying information" have led the Government to question the Holtec costs Plaintiff claims as damages in this case.

RESPONSE:

Defendant defers response to this interrogatory. The Court has not yet entered a protective order governing the Defendant's use of Holtec Confidential Information. Assuming that the protective order ultimately entered in this case will duplicate the protective order entered in *System Energy Resources v. United States*, Fed. Cl. No. 23-78, under paragraph 15 of that protective order the United States is not permitted to share Holtec Confidential Information with Entergy without first assessing whether Entergy had contemporaneous access to that information. Defendant intends to take further discovery on that issue and will supplement this response as appropriate based on the information later obtained through discovery produced by Entergy.

INTERROGATORY NO. 6:

From January 1, 2012 through the present, have any investor-owned electric utilities made claims under Defendant's spent nuclear fuel uniform settlement program for Holtec costs relating to spent fuel management services including, but not limited to, the cost to purchase casks, ancillary equipment, and performance of loading services? If so, and without identifying the particular settling party, identify for each settling party the date of the settlement, the claim period, and the claimed costs reimbursed by Defendant. Your response should identify the capacity of the purchased casks, the incremental cost per cask, any services included in the per-cask cost, the type and cost of individual ancillary equipment, and the number of casks loaded per campaign for which costs are claimed by the settling party.

RESPONSE:

Defendant objects to this interrogatory. The information sought is not relevant to any party's claim or defense. The issue presented in this case is whether the costs claimed by Entergy relating to expenses incurred at Waterford Nuclear Generating Station are recoverable as contract damages under the relevant legal standards. To the extent that DOE's reimbursements for spent nuclear fuel at other nuclear plants were considered as part of Entergy's contemporaneous decision-making process, Entergy is obligated to disclose that fact and produce the relevant documents in its possession, custody, or control relating to DOE's actions that informed its decision. Entergy has made no such assertion. Thus, DOE's actions are not relevant to any party's claim or defense.

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/Lisa L. Donahue
LISA L. DONAHUE
Assistant Director

s/Evan Wisser
EVAN WISSER
Senior Trial Counsel
NATALEE A. ALLENBAUGH
DANIEL D. FALKNOR
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Telephone: 202-616-3682
Email: evan.wisser@usdoj.gov
*Attorneys for Defendant*

November 12, 2025

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 12th day of November 2025, I caused to be sent via electronic mail the Government's Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories to the following parties and their counsel:

System Energy Resources, et al.
Charles E. Ross
401 East Capitol Street, Suite 600
Jackson, MS 39201

Entergy Louisiana, LLC
Robin F. Bromberg
Langley & Bromberg LLC
2700 U.S. Highway 280, Suite 350E
Birmingham, AL 35223

Holtec International
William M. Sullivan, Jr.
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, N.W.
Washington, D.C. 20036

s/Evan Wisser
Evan Wisser

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SYSTEM ENERGY RESOURCES, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant,<br><br>and<br><br>HOLTEC INTERNATIONAL,<br><br>Intervenor. | Nos. 23-78C and 24-118C<br>(Consolidated)<br>Judge Holte |
| ENTERGY LOUISIANA, LLC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant,<br><br>and<br><br>HOLTEC INTERNATIONAL,<br><br>Intervenor. | |

**DEFENDANT'S CONSOLIDATED RESPONSES AND OBJECTIONS TO PLAINTIFFS' SYSTEM ENERGY RESOURCES, INC., ET AL'S THIRD SET OF INTERROGATORIES AND FOURTH SET OF REQUESTS FOR PRODUCTION TO DEFENDANT, AND ENTERGY LOUISIANA LLC'S SECOND SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT**

Pursuant to Rules 26, 33, and 34 of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, provides the following responses and objections to the interrogatories and requests for production served by plaintiffs System Energy Resources, Inc., et al., and Entergy Louisiana, LLC on February 13, 2026.

## INTERROGATORIES

INTERROGATORY NO. 21 (23-78) AND 7 (24-118):

If your answer to any of Plaintiffs' February 13, 2026 requests for admission is anything other than an unqualified admission, explain in detail the basis for your denial or qualified admission.

RESPONSE:

As required by RCFC 36(a)(4), in defendant's responses to plaintiffs' requests for admissions we have provided explanations for any requests that are not admitted in full.