IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SYSTEM ENERGY RESOURCES, INC., et al., Plaintiffs, v. THE UNITED STATES, Defendant, and HOLTEC INTERNATIONAL, Intervenor. | ) | Nos. 23-78C and 24-118C (Consolidated) Judge Holte |
| ENTERGY LOUISIANA, LLC. Plaintiff, v. THE UNITED STATES, Defendant, and HOLTEC INTERNATIONAL, Intervenor. | ) | |

**DEFENDANT'S OPPOSITION TO PLAINITFFS' MOTION TO COMPEL RCFC 30(b)(6) TESTIMONY AND CROSS-MOTION FOR PROTECTIVE ORDER**


BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

LISA L. DONAHUE
Assistant Director

EVAN WISSER
Senior Trial Counsel
Commercial Litigation Branch,
Civil Division, U.S. Department of Justice

OF COUNSEL:

NATALEE A. ALLENBAUGH
LAURA O. ARADI
DANIEL D. FALKNOR
KRISTEN E. OLSON
Trial Attorneys

BRIGHTON SPRINGER
Office of the General Counsel
U.S. Department of Energy

TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

STATEMENT OF THE ISSUES ..... 2

STATEMENT OF THE CASE ..... 3

ARGUMENT ..... 4

I. Standard of Review ..... 4

II. Entergy Cannot Compel DOE to Produce a Witness to Testify Regarding Topics for Which DOE Possesses no Information ..... 5

III. Entergy Cannot Compel DOE's Witness to Testify Regarding Topics Protected by the Attorney-Client and Attorney Work-Product Privileges ..... 20

IV. Entergy Cannot Compel DOE to Produce a Witness to Testify Regarding DOE's Substantive Evaluation of Settlement Proposals by Other Spent Nuclear Fuel Plaintiffs, Which are Inadmissible in These Cases Under FRE 408 and Cannot Otherwise be Relevant to any Party's Claim or Defense ..... 23

V. The Court Should Grant a Protective Order Concerning the Depositions of Mr. Espiritu and Ms. Barton Consistent With its Rulings on the 30(b)(6) Privileged Topics and the 30(b)(6) Topics Barred by FRE 408 ..... 26

CONCLUSION ..... 27

# TABLE OF AUTHORITIES

## Cases

*A.I. Credit Corp. v. Legion Ins. Co.*,
265 F.3d 630 (7th Cir. 2001), *as amended on denial of reh'g* (Nov. 26, 2001) ....................... 12

*Amergen Energy Co., LLC ex rel. Exelon Generation Co., LLC v. United States*,
94 Fed. Cl. 413 (2010) ........................................................................................ 10, 11

*Bigsby v. Barclays Cap. Real Est., Inc.*,
329 F.R.D. 78 (S.D.N.Y. 2019)........................................................................................ 5

*Bos. Edison Co. v. United States*,
157 Fed. Cl. 772 (2022) ........................................................................................ 4

*Bos. Edison Co. v. United States*,
75 Fed. Cl. 557 (2007) ........................................................................................ 5

*Bouchard v. United States*,
241 F.R.D. 72 (D. Me. 2007) ........................................................................................ 11

*Burns v. Phillips*,
50 F.R.D. 187 (N.D. Ga. 1970) ........................................................................................ 11

*Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co.*,
201 F.R.D. 33 (D. Mass. 2001) ........................................................................................ 7

*Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*,
No. 13-cv-1047, 2016 WL 9460471 (W.D. Ky. June 29, 2016)................................................ 6

*Dairyland Power Co-op. v. United States*,
79 Fed. Cl. 709 (2007) ........................................................................................ 5, 6, 22, 24

*Douglas v. Landmark Am. Ins. Co.*,
No. MO:22-CV-00167-DC-RCG, 2024 WL 4101935 (W.D. Tex. June 25, 2024).................... 7

*Dravo Corp. v. Liberty Mut. Ins. Co.*,
164 F.R.D. 70 (D. Neb. 1995) ........................................................................................ 5

*Eden Isle Marina, Inc. v. United States*,
89 Fed. Cl. 480 (2009) ........................................................................................ 21

*Entergy Nuclear Fitzpatrick, LLC v. United States*,
Fed. Cl. No. 03-2627C ........................................................................................ 11

*Entergy Nuclear Generation Company v. United States*,
Fed. Cl. No. 14-1248C ........................................................................................ 11

*F.T.C. v. Boehringer Ingelheim Pharms., Inc.*,
778 F.3d 142 (D.C. Cir. 2015) ........................................................................................ 21

*Fed. Trade Comm'n v. Boehringer Ingelheim Pharms., Inc.*,
892 F.3d 1264 (D.C. Cir. 2018) ...................................................................................... 21

*Fla. v. United States*,
342 F.R.D. 153 (N.D. Fla. 2022)................................................................................. 4, 23

*Forest Prods. Nw., Inc. v. United States,*
453 F.3d 1355 (Fed. Cir. 2006)......................................................................................... 5

*Gardens v. United States*,
138 Fed. Cl. 623 (2018) .................................................................................................. 13

*Giesecke+Devrient GmbH v. United States*,
150 Fed. Cl. 330 (2020),
*aff'd sub nom. Giesecke & Devrient GmbH v. United States, Gemalto Inc.*,
No. 2022-2002, 2024 WL 3171658 (Fed. Cir. June 26, 2024),
and *aff'd sub nom. Giesecke & Devrient GmbH v. United States, Gemalto Inc.*,
No. 2022-2002, 2024 WL 3171658 (Fed. Cir. June 26, 2024) .......................................... 6

*Goodyear Tire & Rubber Co. v. CEVA Logistics Singapore, Ltd.*,
348 F.R.D. 54 (E.D. La. 2024),
*review denied sub nom. Goodyear Tire & Rubber Co. v. CEVA Logistics Singapore Pte Ltd*,
No. CV 22-4561, 2024 WL 5086077 (E.D. La. Dec. 12, 2024) ........................................ 6

*Health Republic Ins. Co. v. United States*,
129 Fed. Cl. 115 (2016) .................................................................................................... 8

*Herrmann v. United States*,
127 Fed. Cl. 22 (2016) ...................................................................................................... 4

*Holland v. United States*,
No. 95-524C, 2005 WL 6115374 (Fed. Cl. Aug. 1, 2005) ................................................ 4

*In re Carney*,
258 F.3d 415 (5th Cir. 2001)........................................................................................... 12

*JPMorgan Chase Bank v. Liberty Mutual Ins. Co.*,
209 F.R.D. 361 (S.D.N.Y. 2002)..................................................................................... 15

*K-Con Bldg. Sys., Inc. v. United States*,
778 F.3d 1000 (Fed. Cir. 2015)......................................................................................... 8

*Kershner v. Beloit Corp.*,
106 F.R.D. 498 (D. Me. 1985) ........................................................................................ 11

*Lakeland Partners, L.L.C. v. United States*,
88 Fed. Cl. 124 (2009) ........................................................................................ 11

*NorthStar Vermont Yankee, LLC v. United States*,
Fed. Cl. No. 18-1209C ........................................................................................ 11

*Power Auth. of New York v. United States*,
62 Fed. Cl. 376 (2004) ........................................................................................ 24

*QBE Ins. Corp. v. Jorda Enters., Inc.*,
277 F.R.D. 676 (S.D. Fla. 2012) ........................................................................... 6

*Res. Invs., Inc. v. United States*,
93 Fed. Cl. 373 (2010) .......................................................................................... 4

*Russo v. Aerojet Rocketdyne, Inc.*,
No. 18-cv-3024, 2020 WL 4530703 (E.D. Pa. Aug. 6, 2020) .................................... 5

*S.E.C. v. Merkin*,
283 F.R.D. 689 (S.D. Fla.), *objections overruled*, 283 F.R.D. 699 (S.D. Fla. 2012)........... 4, 24

*Southern California Edison Company v. United States*,
Fed. Cl. No. 19-1792C ........................................................................................ 11

*Southern Nuclear Operating Company v. United States*,
Fed. Cl. No. 98-614C .......................................................................................... 11

*Stockdale v. Stockdale*,
No. 08-cv-1773, 2009 WL 5217001 (E.D. Mo. Dec. 30, 2009) ................................ 11

*Tri-State Hosp. Supply Corp. v. United States*,
226 F.R.D. 118 (D.D.C. 2005) ................................................................................. 7

*U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.*,
No. 09-cv-1002, 2012 WL 3537070 (M.D. Fla. Aug. 14, 2012) .............................. 15

*United States v. Stabl Inc.*,
No. 16-cv-233, 2018 WL 3758204 (D. Neb. Aug. 8, 2018) ...................................... 14

*United States v. Taylor*,
166 F.R.D. 356 (M.D.N.C.), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996) ........................ 12

Statutes

28 U.S.C. § 516........................................................................................... 10, 17, 20

## Rules

2002 Rules Committee Note, Rules of the United States Court of Federal Claims (as amended July 27, 2026) .......... 9

Fed. R. Civ. P. 30(b)(6) .......... 8, 10

Federal Rule of Evidence 408 .......... 5, 27

RCFC 26(c) .......... 7

RCFC 30(b)(6) .......... 7, 8

## Other Authorities

8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2252 (2d ed. Supp. 2009) .......... 14

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SYSTEM ENERGY RESOURCES, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant,<br><br>and<br><br>HOLTEC INTERNATIONAL,<br><br>Intervenor. | Nos. 23-78C and 24-118C<br>(Consolidated)<br>Judge Holte |
| ENTERGY LOUISIANA, LLC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant,<br><br>and<br><br>HOLTEC INTERNATIONAL,<br><br>Intervenor. | |

**DEFENDANT'S OPPOSITION TO PLAINITFFS' MOTION TO COMPEL RCFC 30(b)(6) TESTIMONY AND CROSS-MOTION FOR PROTECTIVE ORDER**

Pursuant to Rules 7.2 and 26(c) of the Rules of the Court of Federal Claims, defendant, the United States, respectfully submits this response to plaintiffs' motion to compel RCFC 30(b)(6) testimony and cross-motion for protective order concerning the noticed depositions of

Kurt Espiritu, a current employee of the United States Department of Energy (DOE) and Constance Barton, a former DOE employee.

Regarding Entergy's motion to compel, the United States asks that the Court deny the motion to compel and confirm that DOE's 30(b)(6) representative will not be required to testify regarding three categories of topics, as detailed below: (1) topics for which DOE possesses no information; (2) topics that are protected by the attorney-client and attorney work product privileges; and (3) topics concerning DOE's substantive evaluation of settlement proposals by other spent nuclear fuel plaintiffs, which are inadmissible in these cases under Federal Rule of Evidence (FRE) 408 and cannot otherwise be relevant to any party's claim or defense. Some of the topics noticed by Entergy fall under more than one of the three categories of prohibited inquiry listed above, which we note in the discussion below.

Regarding the United States' cross-motion for protective order, we ask that for issues 2 (privileged topics) and 3 (topics barred by FRE 408), the Court equally apply its ruling to the individual depositions of Mr. Espiritu and Ms. Barton.

**STATEMENT OF THE ISSUES**

1. Whether Entergy cannot compel DOE to produce a witness to testify regarding topics for which DOE possesses no information.

2. Whether Entergy cannot compel DOE's witness to testify regarding topics protected by the attorney-client and attorney work-product privileges.

3. Whether Entergy cannot compel DOE to produce a witness to testify regarding DOE's substantive evaluation of settlement proposals by other spent nuclear fuel plaintiffs, which are inadmissible in these cases under FRE 408 and cannot otherwise be relevant to any party's claim or defense.

4. Whether the Court should grant a protective order concerning the depositions of Mr. Espiritu and Ms. Barton consistent with its rulings on the 30(b)(6) privileged topics and the 30(b)(6) topics barred by FRE 408.

## STATEMENT OF THE CASE

On July 9, 2026, counsel for Entergy sent by email a list of proposed topics for a 30(b)(6) deposition of DOE. Ex. A. Counsel for the United States responded a week later, on July 16, 2026, outlining the United States' positions on the proposed topics. Ex. B. The parties scheduled a videoconference on July 20, 2026, to discuss the proposed topics and the United States' objections. On July 21, 2026, counsel for the United States confirmed by email that the United States maintained the objections detailed in our July 16th letter. Entergy filed its motion to compel on August 18, 2026, although Entergy has not yet served any subpoena or notice of deposition regarding its requested 30(b)(6) deposition.

After filing the motion to compel, on August 21, 2026, counsel for Entergy advised that Entergy wanted to depose two DOE personnel listed on the United States' initial disclosures, Kurt Espiritu, a current DOE employee, and Constance Barton, a former DOE employee. Ex. C. Counsel for the United States responded on August 22, 2026, advising that the United States would need to file a motion for protective order assuming Entergy intended to inquire into the same topics concerning DOE's settlement evaluations that were included in the 30(b)(6) notice. *Id.* Counsel for Entergy did not further respond to that email, but given the short time remaining in the discovery schedule, for the sake of efficiency the United States is cross-moving for a protective order here to ensure that the scope of any individual depositions aligns with the permissible scope of the DOE 30(b)(6) deposition.

## ARGUMENT

### I. Standard of Review

Although Entergy filed its motion to compel before serving any deposition subpoena or notice for a 30(b)(6) deposition of DOE, and before the deposition itself occurred, the Court has discretion to consider the motion to compel now. The Court can rule on a motion to compel prior to a deposition where the United States "has made an 'unmistakable' statement limiting a deponent's testimony . . . ." *Herrmann v. United States*, 127 Fed. Cl. 22, 32-33 (2016) (quoting *Res. Invs., Inc. v. United States*, 93 Fed. Cl. 373, 378 (2010)); *see also S.E.C. v. Merkin*, 283 F.R.D. 689, 698 (S.D. Fla.), *objections overruled*, 283 F.R.D. 699 (S.D. Fla. 2012) ("[I]n an effort to streamline the 30(b)(6) depositions and to prevent the SEC from becoming trapped in the awkward scenario of having its counsel silently sit by while irrelevant and/or overly broad questions are asked, the Court considers it appropriate to pinpoint which topics may not, at least for now, be covered in a 30(b)(6) deposition of the SEC."). *Cf. Fla. v. United States*, 342 F.R.D. 153, 156-57 (N.D. Fla. 2022) (citing cases supporting and opposing the propriety of a Court evaluating the propriety of 30(b)(6) topics prior to the deposition). When evaluating a motion to compel, the Court has broad discretion to craft an appropriate resolution, taking into account the balance inherent in the scope of discovery under RCRF 26. *Bos. Edison Co. v. United States*, 157 Fed. Cl. 772, 775 (2022); *Holland v. United States*, No. 95-524C, 2005 WL 6115374, at *2 (Fed. Cl. Aug. 1, 2005).

Regarding the United States' cross-motion for protective order, the Court can issue a protective order to limit the scope of discovery sought "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." RCFC 26(c). The United States, as the moving party, bears the burden to demonstrate good cause for a protective order.

*Bos. Edison Co. v. United States*, 75 Fed. Cl. 557, 561 (2007). Good cause generally requires a demonstration "that the discovery request is considered likely to oppress an adversary or might otherwise impose an undue burden." *Forest Prods. Nw., Inc. v. United States,* 453 F.3d 1355, 1361 (Fed. Cir. 2006).

## II. Entergy Cannot Compel DOE to Produce a Witness to Testify Regarding Topics for Which DOE Possesses no Information

Entergy may take the testimony of DOE as a governmental agency through a designated representative. "[A] party may name as the deponent a public or private corporation, a partnership, an association, a *governmental agency*, or other entity . . . ." RCFC 30(b)(6) (emphasis added); *accord Dairyland Power Co-op. v. United States*, 79 Fed. Cl. 709, 714 (2007) ("RCFC 30(b)(6) requires that when a party seeking to depose a governmental agency announces the subject matter of the proposed deposition, the agency must produce someone familiar with that subject."). The United States does not dispute that Entergy may depose DOE through an agency representative.

But DOE, like any 30(b)(6) entity, can only testify to matters within the scope of its knowledge. "The persons designated must testify about information known or reasonably available to the organization." RCFC 30(b)(6). "If the entity receiving the deposition notice does not possess knowledge of the matters listed in the deposition notice, 'then its obligations under Rule 30(b)(6) obviously cease, since the rule requires testimony only as to "matters known or reasonably available to the organization."'" *Bigsby v. Barclays Cap. Real Est., Inc.*, 329 F.R.D. 78, 81 (S.D.N.Y. 2019) (quoting *Dravo Corp. v. Liberty Mut. Ins. Co.*, 164 F.R.D. 70, 76 (D. Neb. 1995) (in turn quoting Fed. R. Civ. P. 30(b)(6))); *accord Russo v. Aerojet Rocketdyne, Inc.*, No. 18-cv-3024, 2020 WL 4530703, at *6 (E.D. Pa. Aug. 6, 2020) ("[T]he rule does not contemplate that a Rule 30(b)(6) witness be required to provide information that is not

reasonably available to it."); *Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*, No. 13-cv-1047, 2016 WL 9460471, at *4 (W.D. Ky. June 29, 2016) ("Only if a corporation or governmental agency genuinely is unable to provide an appropriate designee because: it does not have the requested information; cannot reasonably obtain it; and, lacks sufficient knowledge after a good faith, thorough review of all available information, will its obligations under Rule 30(b)(6) cease. (citing *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 690 (S.D. Fla. 2012))).[1]

The Court has applied this rule specifically to 30(b)(6) depositions of DOE by spent nuclear fuel plaintiffs. *Dairyland*, 79 Fed. Cl. at 715-16 (explaining that, with respect to DOE 30(b)(6) deposition notices, "there exists no obligation to produce witnesses who know every single fact surrounding a matter," and "a witness's inability to testify as to information unavailable to the company he represents will not constitute a violation of an RCFC 30(b)(6) deposition order."). Nor is it inappropriate for the Court to limit the scope of a 30(b)(6) deposition prior to the deposition to exclude topics beyond the knowledge of the entity being deposed. *Goodyear Tire & Rubber Co. v. CEVA Logistics Singapore, Ltd.*, 348 F.R.D. 54, 74 (E.D. La. 2024), *review denied sub nom. Goodyear Tire & Rubber Co. v. CEVA Logistics Singapore Pte Ltd*, No. CV 22-4561, 2024 WL 5086077 (E.D. La. Dec. 12, 2024) (in a pre-deposition motion, explaining that "if the corporation does not possess such knowledge as to so prepare the witness or another designate, then its obligations under Rule 30(b)(6) obviously

---

[1] "This Court's interpretation of the Rules of the Court of Federal Claims . . . is guided by case law interpreting the Federal Rules of Civil Procedure." *Giesecke+Devrient GmbH v. United States*, 150 Fed. Cl. 330, 342 (2020), *aff'd sub nom. Giesecke & Devrient GmbH v. United States, Gemalto Inc.*, No. 2022-2002, 2024 WL 3171658 (Fed. Cir. June 26, 2024), and *aff'd sub nom. Giesecke & Devrient GmbH v. United States, Gemalto Inc.*, No. 2022-2002, 2024 WL 3171658 (Fed. Cir. June 26, 2024) (citing 2002 Rules Committee Note, Rules of the United States Court of Federal Claims (as amended July 27, 2026).

cease, since the rule requires testimony only as to matters known or reasonably available to the organization." (internal quotations and citations omitted)).

Finally, Courts have generally advised parties to disclose the limits of the deponent entity's knowledge prior to the deposition to avoid wasted effort during the deposition. *E.g.*, *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 131 (D.D.C. 2005) ("[D]efendant should have either: 1) clarified its inability to produce 30(b)(6) witnesses much earlier in the process, or 2) produced a 30(b)(6) witness for the issues that could be addressed while reserving its right to pursue a protective order for the other issues raised in the notice."); *Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 38 (D. Mass. 2001) ("[I]f, after reviewing all information known or reasonably available to the company, the Fabiano sons still would not be able to testify as to some of the 30(b)(6) topics and there were no other available witnesses who could do so, Fabiano should have so informed Scarpa and Black Diamond well in advance of the scheduled depositions."); *cf. Douglas v. Landmark Am. Ins. Co.*, No. MO:22-CV-00167-DC-RCG, 2024 WL 4101935, at *3 (W.D. Tex. June 25, 2024) ("Though The Havens Group was obligated to present a witness to testify (by virtue of failing to object to Landmark's 30(b)(6) deposition notice), under the Rule the witness need only testify 'about information known or reasonably available to' The Havens Group." (quoting Fed. R. Civ. P. 30(b)(6))).

As a general matter, in pursuing its motion to compel Entergy appears to misunderstand DOE's role in these cases. During the parties' videoconference discussing the 30(b)(6) topics, counsel for Entergy repeatedly asked counsel for the United States to confirm that DOE was the client in these lawsuits, and then to explain why DOE would not be determining the United States' litigation positions. Counsel for the United States reminded Entergy that government litigation does not work the same as private party litigation. By law, the Attorney General has

responsibility to supervise and conduct all litigation to which the United States is a party. 28 U.S.C. § 516. "The DOJ has 'exclusive and plenary' control over the United States' defense of this litigation, foreclosing the ability of another government entity from acting on the United States' behalf." *Health Republic Ins. Co. v. United States*, 129 Fed. Cl. 115, 117–18 (2016); *see also K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015) (explaining that, in the Contract Disputes Act context, the filing of litigation divests the contracting officer from all authority of the underlying claim). Particularly with spent nuclear fuel litigation, which has been ongoing for nearly 30 years and now focuses almost exclusively on the conduct of the plaintiffs, the relevant knowledge necessary to defend these cases either already has been produced or constitutes litigation decisions residing exclusively within the Department of Justice with little or no need for factual input from DOE.

As explained below, many of the deposition topics for which Entergy moves to compel seek testimony regarding information that DOE as a whole does not possess. The United States asserts this objection in whole or in part with respect to the following topics.

Topic No. 1:

**The DOE settlement program for spent nuclear fuel, including:**
**a. How DOE evaluates claims by utilities**
**b. The DOE standard for reasonableness**
**c. How DOE evaluates whether a claim is reasonable and the internal criteria used by DOE**
**d. The DOE standard settlement agreement forms, including how they were developed**
**e. The procedural steps in the standard settlement process.**
**f. DOE payments to spent nuclear fuel plaintiffs for dry fuel storage cask systems since 2010, including but not limited to reimbursements for Holtec FW systems**

Although not referenced in Entergy's motion, during the parties' July 20, 2026 videoconference, counsel for the United States agreed that DOE can produce a witness to testify about DOE's role in the settlement process generally in response to topic 1. However, to temper Entergy's expectations, counsel for the United States emphasized that DOE has no role in and no

knowledge of the ultimate decisions by the authorized representative of the Attorney General with respect to any particular settlement payment. *See* Ex. B at 2-3 (explaining the general settlement process). Thus, while a DOE representative can testify as to DOE's specific role in evaluating settlement claims, the decision whether to pay a specific settlement claim and the ultimate criteria used to evaluate that claim reside exclusively within the discretion of the Attorney General's authorized representative. The United States does not want to risk any confusion on this point – any testimony provided by DOE about how DOE evaluates spent nuclear fuel settlement claims does not necessarily speak for how the United States itself, through the Attorney General's authorized representative, evaluates spent nuclear fuel settlement claims. Moreover, to the extent DOE provided any input into the Attorney General's authorized representative's decision, testimony regarding that input would be privileged as explained in section III below. *Infra* at 19-23.

<u>Topic 2:</u>

**Defendant's Responses and/or objections to Plaintiffs' First Consolidated Requests for Admission**

<u>Topic 3:</u>

**Defendant's Responses and Objections to Plaintiffs' Second Consolidated Requests for Admission**

For topics 2 and 3, concerning the United States' responses to Entergy's requests for admission, the United States advised Entergy that no DOE witness can testify as to those topics because the responses to Entergy's requests for admission were prepared exclusively by counsel for the United States. As discussed in detail below, many of the requests for admission were directed to legal issues in these cases, such as the United States' positions on certain legal elements of Entergy's claims and the United States' position as to the adequacy of Entergy's evidence. DOE had no involvement in reviewing or developing responses to those requests,

which were exclusively directed to the United States' legal positions in these cases. The remaining requests were related to factual issues concerning settlements of other spent nuclear fuel claims. DOE has knowledge of the settlement matters related to those requests, but as described below, nearly all of those requests were admitted. To the extent those requests were denied or objected to, the United States relied on information in the possession of DOJ, not DOE, because the requests were directed to settlement determinations made by the Attorney General's authorized representative.

Regarding topic 2, Entergy provides only a brief statement that it is interested in testimony regarding "the factual bases underlying the Government's admissions, denials, and objections." Mot. (ECF No. 161) at 10. Entergy has not identified what specific responses it seeks testimony on, nor why Entergy believes DOE would have knowledge of the responses. Regarding topic 3, Entergy is somewhat more specific, seeking testimony regarding the responses addressing "its positions concerning DOE reimbursements, reasonableness determinations, and the claims-administration procedure." *Id.* at 11. This appears to overlap fully with topic 1, and as stated above DOE can provide a witness with some knowledge of topic 1, subject to the limitations previously explained. Entergy has not otherwise explained what further information under topic 3 it seeks related to the United States' responses to Entergy's second requests for admissions.

In addition, Entergy's desire to take testimony regarding the United States' request for admission responses appears misplaced. "[T]he purpose of requests for admission is to eliminate issues over facts that are not in dispute, and to narrow issues to be tried before the court." *Amergen Energy Co., LLC ex rel. Exelon Generation Co., LLC v. United States*, 94 Fed. Cl. 413, 416 (2010). "'[R]equests for admission are not designed to obtain discovery of the existence of

facts, but rather are intended to establish the admission of facts about which there is no real dispute.'" *Id.* (quoting *Stockdale v. Stockdale*, No. 08-cv-1773, 2009 WL 5217001, at *1 (E.D. Mo. Dec. 30, 2009)). "Requests for admission are 'intended to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial, the truth of which is known to the parties or can be ascertained by reasonable inquiry.'" *Lakeland Partners, L.L.C. v. United States*, 88 Fed. Cl. 124, 132 (2009) (quoting 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2252 (2d ed. Supp. 2009)); *accord Bouchard v. United States*, 241 F.R.D. 72, 75 (D. Me. 2007) (citing *Kershner v. Beloit Corp.*, 106 F.R.D. 498, 499 (D. Me. 1985); *Burns v. Phillips*, 50 F.R.D. 187, 188 (N.D. Ga. 1970). Thus, inquiring into the facts underlying responses to requests for admission is a non sequitur.

For completeness, we provide these brief explanations for each of the requests for admission, which are attached to Entergy's motion at pdf pages 84-105.

<u>Request Nos. 1 and 2</u> asked about the United States' prior litigation positions. DOE does not develop the United States' litigation positions and had no input on the response to these requests. Counsel for the United States located five cases relevant to these requests. *Southern California Edison Company v. United States*, Fed. Cl. No. 19-1792C; *NorthStar Vermont Yankee, LLC v. United States*, Fed. Cl. No. 18-1209C; *Entergy Nuclear Generation Company v. United States*, Fed. Cl. No. 14-1248C; *Entergy Nuclear Fitzpatrick, LLC v. United States*, Fed. Cl. No. 03-2627C; *Southern Nuclear Operating Company v. United States*, Fed. Cl. No. 98-614C. Three involved Entergy as a plaintiff. In the other two, the United States' positions are a matter of public record through the trial filings. DOE as an entity has no additional knowledge as to how the United States' litigation positions in those cases were developed or how similar they may be to the litigation positions taken in these cases.

Request No. 3 asked about information contained in Entergy's cost reports in these cases, which DOE did not develop, has not reviewed, and has no knowledge.

Request No. 4 asked about the documentation submitted by Entergy in support of its claims in these cases. DOE did not generate these documents, has not reviewed them, and has no knowledge of them.

Request No. 5 asked about the documentation supporting Entergy's cost reports in these cases. DOE did not generate these documents, has not reviewed them, and has no knowledge of them.

Request Nos. 6, 7, and 8 asked about the foreseeability of Entergy's claimed costs, an element of its legal burden of proof in these cases. DOE has not evaluated the extent to which the evidence in this case is sufficient to satisfy Entergy's burden of proof.

Request No. 9 asked about the causation element of Entergy's claim, another element of its legal burden of proof in these cases. DOE has not evaluated the extent to which the evidence in this case is sufficient to satisfy Entergy's burden of proof.

Request Nos. 10, 12, 13 ,14, 15, 16, 18, 20, 21, 22 (duplicated Request No. 16) were admitted. It is unclear what Entergy believes it would gain from additional deposition testimony on a matter already admitted in response to a request for admission.. "[A]dmissions . . . are conclusive as to the matters admitted . . . ." *In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001). Deposition testimony under Rule 30(b)(6), by contrast, though "binding" on the agency, is not "tantamount to a judicial admission." *United States v. Taylor*, 166 F.R.D. 356, 362 n.6 (M.D.N.C.), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996); *accord A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 637 (7th Cir. 2001), *as amended on denial of reh'g* (Nov. 26, 2001); *Gardens v.*

*United States*, 138 Fed. Cl. 623, 625 (2018). Rule 30(b)(6) testimony can still be disputed, while an admission in response to a request for admission cannot.

Request No. 11 asks about payments made to another utility, Exelon, through a settlement agreement. All determinations about whether to pay this amount were made by the Attorney General's authorized representative – not DOE – and DOE has no independent knowledge of the reasons for that decision. To the extent DOE provided any input into the Attorney General's authorized representative's decision, testimony regarding that input would be privileged as explained in the next section. *Infra* 19-23.

Request No. 17 was objected to and was not admitted or denied. This request appears to have been rendered obsolete by requests 18-21.

Request No. 19 asks about payments made to the owner of another nuclear power plant, Susquehanna, through a settlement agreement. All determinations about whether to pay this amount were made by the Attorney General's authorized representative – not DOE – and DOE has no independent knowledge of the reasons for that decision. To the extent DOE provided any input into the Attorney General's authorized representative's decision, testimony regarding that input would be privileged as explained in the next section. *Infra* at 19-23.

Topic 4:

**Defendant's Responses to Plaintiffs' Interrogatories in Cause No. 23-78C and Cause No. 24-118C**

The United States' response to topic 4 identified the interrogatories where DOE provided factual input and to which a DOE 30(b)(6) witness could testify. Ex. B. at 4-5. For the remaining interrogatories, the United States stated that no DOE witness could testify for two different reasons.

For a number of interrogatories, the United States objected to the interrogatory and did not provide a substantive response. Ex. B at 4-5. Entergy made no effort to compel further responses from the United States, through correspondence or a motion to compel. Thus, it is evident that DOE cannot testify as to interrogatories that the United States refused to answer through objections of counsel.

For the remaining interrogatories, Entergy asked for the United States' anticipated litigation positions in contention interrogatories. For the same reasons as described above, under 28 U.S.C. § 516, DOE has no role in developing the United States' litigation positions. Counsel for the United States can confirm that DOE did not provide any input to these responses. And while we agree that a party can ordinarily seek discovery into the evidence supporting a party's factual contentions, here DOE does not possess any relevant evidence. DOE's liability has already been established. These are damages claims, evaluated exclusively on the evidence in the possession of the plaintiffs. The relevant facts supporting the United States' legal contentions are already in the possession of Entergy or have been disclosed through the United States' expert reports. DOE has no independent knowledge or awareness of any of the relevant facts supporting the United States' legal positions in these cases.

In this situation, where DOE has no independent knowledge of the relevant facts except as communicated by DOJ attorneys through litigation, deposition testimony of the United States' legal contentions is improper. *United States v. Stabl Inc.*, No. 16-cv-233, 2018 WL 3758204, at *7 (D. Neb. Aug. 8, 2018) (granting a protective order where "[d]efendants also ask the [government] plaintiffs to disclose facts their attorneys believe apply to their position and how counsel intend apply those facts to support the plaintiffs' positions. '[D]epositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to

the extent discoverable at all prior to trial, must be discovered by other means.'" (quoting *U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.*, No. 09-cv-1002, 2012 WL 3537070, at *4 (M.D. Fla. Aug. 14, 2012) (in turn citing *JPMorgan Chase Bank v. Liberty Mutual Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002))))).

Topic 7:

**Whether DOE agrees with the opinions of Defendant's experts with respect to Entergy's prices with Holtec under the 2020 GSA.**

DOE has not reviewed or analyzed any of the United States' expert opinions offered in these cases. DOE has no independent knowledge of those opinions and has no basis to agree or disagree with those opinions. This topic lies fully outside the scope of DOE's knowledge.

Topic 8:

**DOE's reimbursement of Exelon for casks purchased pursuant to the June 28, 2018, Purchase Order No. 658625, Rev. 0, document bates number HOLTECGG_00004200-00004216.**

Topic 9:

**DOE's reimbursement of Susquehanna Nuclear, LLC (or any of its affiliates, subsidiaries, or parent companies) for casks purchased pursuant to the contract between Susquehanna Nuclear, LLC and Holtec, dated June 25, 2019, bates number HCS001-0057546.**

As explained in the United States' letter response to Entergy regarding these two topics, Ex. B at 5-6, the facts of these reimbursements were admitted to in response to Entergy's request for admissions. Entergy stated that it needed additional testimony to discover the standards, analyses, and determinations underlying the reimbursements. The United States objects to these inquiries in the following sections on the basis of privilege, *infra* at 19-23, and under FRE 408, *infra* at 23-26, but these inquiries are also beyond the scope of DOE's knowledge because DOE did not make the decision to reimburse these claimants pursuant to a settlement agreement. Those decisions were made exclusively by the Attorney General's authorized representative.

Thus, DOE has no knowledge of how these two claims were ultimately evaluated, how the settlement amounts were calculated, or why the amounts were agreed to by the Attorney General's authorized representative.

Topic 11:

**DOE's knowledge of whether nuclear utilities use non-bid negotiations with vendors as opposed to competitive bids, and the basis for such knowledge.**

Entergy's reason for moving to compel on this topic is unclear, as the United States agreed that DOE could provide a witness to testify on this topic. Our response, Ex. B at 6, was merely intended to temper Entergy's expectations by explaining that DOE does not generally survey utility procurement practices as part of its mission and operations. Any information in DOE's possession would be incidental as part of its claims review process and would not be comprehensive as to the entire industry. But the DOE witness will testify as to whatever DOE knows on this topic.

Topic 12:

**Whether DOE has approved claims in the settlement program, including but not limited to specific claims for cask costs, which are derived from vendor contracts entered into without a competitive bid process.**

The United States' primarily objects to these topic as privileged and irrelevant under FRE 408, as discussed in sections III and IV below. *Infra* at 19-26. However, to avoid any doubt, we reiterate that DOE does not approve any claims. Only the Attorney General's authorized representative approves claims. Thus, while DOE is generally aware of what claims are ultimately approved, DOE has no knowledge of whether a utilities' use of competitive bid processes is relevant or irrelevant to the reimbursement decision.

Topic 16:

**Whether DOE has done an analysis of Plaintiffs' claims pertaining to FW casks and ancillaries purchased pursuant to the 2020 Holtec GSA, and if so, how such analysis was conducted, who conducted such analysis, and any documentation of such analysis.**

DOE has performed no analysis of the type described in topic 16. The analyses supporting the United States' evaluation of the prices in the 2020 Holtec-Entergy GSA were performed exclusively by the United States' litigation experts. Those reports have been produced, and Entergy has already taken deposition testimony from all the United States' experts.

Topic 17:

**Whether DOE has formed a belief or position as to the reasonableness of the prices for FW casks and ancillaries purchased by Plaintiffs from Holtec under the Holtec 2020 GSA, and if so, that opinion and how DOE arrived at such opinion.**

DOE has performed no analysis of the type described in topic 17. The analyses supporting the United States' evaluation of the prices in the 2020 Holtec-Entergy GSA were performed exclusively by the United States' litigation experts. Those reports have been produced, and Entergy has already taken deposition testimony from all of the United States' experts.

Topic 21:

**DOE's defense to Plaintiffs' claims in these cases.**

Entergy's motion states that it seeks only testimony as to the facts supporting the United States' defenses in these cases. Mot. at 17. As explained in response to topic 4 seeking testimony regarding the United States' contention interrogatory responses, under 28 U.S.C. § 516 DOE has no role in developing the United States' litigation positions. Counsel for the United States can confirm that DOE did not provide any input, factual or otherwise, to the defenses asserted by the United States in these cases. And while we agree that a party can ordinarily seek

discovery into the evidence supporting a party's factual contentions, here DOE does not possess any relevant evidence. DOE's liability has already been established. These are damages claims, evaluated exclusively on the evidence in the possession of the plaintiffs. The relevant facts supporting the United States' legal contentions are already in the possession of Entergy or have been disclosed through the United States' expert reports. DOE has no independent knowledge or awareness of any of the relevant facts supporting the United States' legal positions in these cases. If Entergy wishes to "explore the facts supporting or contradicting the Government's defenses," Mot. at 17, it must refer to its own witnesses and documents and the opinions of the United States' experts, all of whom Entergy has already deposed.

<u>Topic 22:</u>

**Any previous DOE challenges regarding the reasonableness of any vendor costs claimed by spent nuclear fuel plaintiffs in any spent nuclear fuel case based upon the circumstances of negotiation and execution of the underlying vendor contract.**

Entergy's motion clarifies that it seeks deposition testimony in connection with the prior challenges disclosed by the United States in response to Entergy's request for admission numbers 1 and 2. Mot. at 18. We addressed this in response to topic 2 above. *Supra* at 11. DOE does not develop the United States' litigation positions and has no independent knowledge of the United States' litigation positions in those cases, how those positions were developed, or how similar they may be to the litigation positions taken in these cases. We reiterate that three of the cited cases involved Entergy as a plaintiff, so Entergy already has complete knowledge as to the circumstances of those cases and how they compare to the present cases. In the other two, the United States' positions are matter of public record through the trial filings.

Topic 23:

**Any desire, preference, direction, benefit or intention by DOE to delay the progress of these cases or to otherwise extend the period of time between filing and payment by Defendant of a judgment.**

The United States responded to Entergy on this topic as follows:

> No DOE witness can testify on this topic because, as previously stated in response to plaintiffs' interrogatories, there is no desire, preference, direction, benefit, or intention by DOE or any part of the United States government to delay the progress of these cases or to otherwise extend the period of time between filing and payment by Defendant of a judgment. The United States has made no litigation decisions in these cases based on the considerations contained in this request. The discovery delays in these cases have been caused by plaintiffs' choice to attempt to recover plainly unjustifiable costs, plaintiffs' failure to impose reasonable litigation holds to ensure access to relevant documents in discovery, and plaintiffs' persistent failures to undertake reasonable discovery efforts consistent with its obligations under the Court's rules.

Ex. B. at 10. The United States provided the same response to Entergy's request for production number 24 in case number 23-78 and number 13 in case number 24-118, seeking production of documents related to any such alleged desire by the United States. No litigation decision has been taken for the purpose of delaying the progress of these cases or to extend the time between filing and judgment. Responsibility for the protracted discovery schedule in this case lies exclusively with Entergy.[2]

For each of these above-referenced topics, the Court should deny Entergy's motion to compel because DOE has no knowledge on these topics.

---

[2] In its motion Entergy asserts that it needs to inquire further on this topic because "[p]laintiffs have received information that the Government may, in fact, have a delay strategy to force utilities into the claims-administration procedure contemplated by the Standard Settlement Agreement." Pl. Mot. at 19. Entergy should not be permitted to engage in a speculative fishing expedition through anonymized innuendo.

## III. Entergy Cannot Compel DOE's Witness to Testify Regarding Topics Protected by the Attorney-Client and Attorney Work-Product Privileges

For several topics relating to the DOE settlement process, although DOE has knowledge of the designated topics, counsel for the United States indicated that the DOE witness would not be able to testify as to privileged attorney-client communications or attorney work-product. Entergy's attempt to overcome this objection is brief, asserting only that the United States cannot "refuse to designate a witness or foreclose inquiry into an entire subject matter." Mot. at 6. Entergy further asserts that the proper course is to object to questions during the deposition rather than refusing to designate a witness. *Id.*

To be clear, the United States is not refusing to designate a witness to testify in response to any RCFC 30(b)(6) topic on the basis that the topic may implicate privileged matters. Nor do we disagree that counsel for the United States can object and direct the witness not to answer questions that probe into privileged areas. Our letter was intended to communicate the boundaries of what we considered privileged matters, and we advised Entergy that the DOE witness would not be able to testify on those matters. Ex. B. In the handful of instances where we stated that we would not identify a DOE witness at all in response to a topic, it was based on our position that Entergy cannot properly inquire into settlement matters because of their irrelevance under FRE 408. At no point did the United States refuse to designate a witness due to our privilege objections.

Entergy's motion does not appear to dispute the matters we have identified as privileged or otherwise present any argument to overcome our privilege assertions. To avoid any ambiguity, counsel for the United States intends to assert as privileged any questions inquiring into "[c]ommunications between [DOE] and [DOE] counsel, as well as communications between [DOE] and attorneys from the Department of Justice representing the government agency in

litigation, [all of which] are included within the ambit of the attorney-client privilege." *Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 495 (2009) (citing cases). From Entergy's motion, this does not appear to be a point of contention.

We also intend to assert as privileged any questions inquiring into DOE's analysis of individual settlement claims. Entergy's motion suggests this could be an area of dispute. Two D.C. Circuit opinions have addressed the scope of attorney-client and work-product privilege when non-attorneys perform factual analyses to support settlement evaluations. The attorney-client privilege covers "the transmission factual information from [agency] employees to [counsel], at [counsel's] request, for the purpose of assisting [counsel] in formulating . . . legal advice regarding a possible settlement." *Fed. Trade Comm'n v. Boehringer Ingelheim Pharms., Inc.*, 892 F.3d 1264, 1268 (D.C. Cir. 2018). This description maps squarely onto the DOE settlement process, in which DOE employees transmit factual information about submitted claims, including DOE's claim analysis, to DOJ to assist in DOJ's recommendation to the Attorney General's authorized representative regarding a possible settlement agreement. And while we believe that all relevant DOE settlement evaluation information was transmitted to DOJ, qualifying for attorney-client communication protection, to the extent DOE performed any supporting analysis that was not transmitted to DOJ, such analysis would be entitled to protection as work-product. *F.T.C. v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 150 (D.C. Cir. 2015).

Indeed, the Court has previously applied this precise logic in a spent nuclear fuel case to preclude a plaintiff from asking questions in a DOE 30(b)(6) deposition about DOE's analysis of settlement claims:

> The government has invoked the attorney-client privilege and the work product doctrine to preclude [DOE's 30(b)(6) designee] Mr.

> Zabransky from testifying about his knowledge of reasonable costs to maintain and store spent fuel. . . .
>
> The government states that Mr. Zabransky would inevitably be forced to divulge the substance of communications between Mr. Zabransky and legal counsel as well as the details of certain analyses that he performed at the direction of counsel in connection with settlement negotiations during the course of continuing [SNF] litigation. . . .
>
> In this case, Mr. Zabransky sought and obtained information concerning reasonable costs for spent fuel storage as an agent of the Justice Department, which was working on the SNF litigation. Disclosing Mr. Zabransky's impressions of what reasonable costs for spent fuel storage would be when he formed such impressions in the course of evaluating potential settlement strategies in the SNF litigation would quite simply imply a settlement amount that the government was considering in these other cases. Determining acceptable settlement amounts can be part of an attorney's planning for litigation, thereby making such deliberations qualify as attorney work product. The Court, then, accepts the government's invocation of the work product doctrine and will not reopen Mr. Zabransky's deposition for the purpose of further questioning him about this issue.

*Dairyland*, 79 Fed. Cl. at 721-22. Here, Entergy seeks the exact same information – DOE's views as to the reasonableness of Entergy's claimed costs – based on the exact same source – DOE's review and input to DOJ on spent nuclear fuel claims settlement evaluations. Thus, we intend to direct the DOE witness not to answer any questions related to DOE's evaluation of individual settlement claims. Entergy's motion offers no argument to overcome this privilege assertion.

For clarity, the following topics in Entergy's motion to compel are likely to probe into privileged terrain:

<u>Topic 1</u> to the extent Entergy asks about DOE's evaluation of specific settlement claims, and in particular topic 1(d), to the extent Entergy asks how the settlement agreement language was developed.

Topics 2 and 3 to the extent Entergy asks about the substance of DOE's input to the United States' responses to Entergy's requests for admission.

Topic 4 to the extent Entergy asks about the substance of DOE's input to the United States' interrogatory responses.

Topics 8 and 9 to the extent Entergy asks about DOE's evaluation of the referenced settlement claims and recommendation to DOJ regarding settlement.

Topic 10 to the extent Entergy asks about specific reviews DOE performs in support of DOJ's settlement evaluations.

Topic 12 to the extent Entergy asks about DOE's evaluation of specific settlement claims.

Topics 21 and 22 to the extent Entergy asks about DOE's input to the United States regarding the defenses raised in these cases or the prior cases cited by the United States in discovery responses to Entergy.

## IV. Entergy Cannot Compel DOE to Produce a Witness to Testify Regarding DOE's Substantive Evaluation of Settlement Proposals by Other Spent Nuclear Fuel Plaintiffs, Which are Inadmissible in These Cases Under FRE 408 and Cannot Otherwise be Relevant to any Party's Claim or Defense

It is likely that most questions concerning DOE's evaluation of individual settlement claims are fully covered by the United States' attorney-client and work-product privilege assertions described above. But to the extent Entergy may ask questions related to DOE's settlement evaluations that would not be covered by an applicable privilege, the United States objects to the inclusion of such topics in the 30(b)(6) deposition because the information cannot possibly be relevant to any party's claim or defense, and because at this late stage of discovery further inquiry into such obviously inadmissible material is not proportional to the needs of the case. The Court can exclude from a 30(b)(6) deposition scope topics that are fully irrelevant to the issues in the case. *Florida*, 342 F.R.D. at 160. And it is appropriate for the Court to resolve

this issue now because, as Entergy observes, counsel for the United States cannot direct a witness not to answer a question on the basis of FRE 408. Mot. at 7 (citing *Dairyland*, 79 Fed. Cl. at 721). But contrary to Entergy's suggestion, that does not make our objection prior to the deposition improper. The Court can appropriately address the proposed topics now to "prevent the [United States] from becoming trapped in the awkward scenario of having its counsel silently sit by while irrelevant and/or overly broad questions are asked." *Merkin*, 283 F.R.D. at 698.

Early in the history of spent nuclear fuel litigation, the Court was confronted with the issue of how DOE determinations in spent nuclear fuel matters resolved by settlement could be used by plaintiffs in cases that proceeded to litigation. The Court correctly concluded that any such evidence is prohibited by FRE 408. *Power Auth. of New York v. United States*, 62 Fed. Cl. 376, 379 (2004). No party may introduce evidence of "furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim" or "conduct or a statement made during compromise negotiations about the claim" to "prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." FRE 408. The Court concluded that evidence of DOE's conduct in spent nuclear fuel settlement matters must be excluded if the evidence sought would be used at trial as "a step toward proving damages." *Power Auth. of New York*, 62 Fed. Cl. 379.

That is precisely how Entergy intends to use the settlement information it seeks:

> [t]he requested testimony is directly relevant to the issues before the Court. The Government contends that Plaintiffs paid unreasonable prices for Holtec dry fuel storage systems and related services. . . . The claims-administration procedure likewise requires DOE to evaluate whether similar costs submitted by other utilities are allowable and reasonable. . . . Because DOE previously determined that comparable Holtec-related costs were reasonable and reimbursable under that procedure, those

> determinations directly bear upon the Government's contention that Plaintiffs' Holtec costs were unreasonable.

Mot. at 8. That is, Entergy intends to use evidence of DOE's settlement evaluations and determinations to support its claim for damages in these cases, or to undercut the United States' defenses against Entergy's damages claim. That is the kind of evidence that FRE 408 expressly precludes.

To be clear, the United States is not asserting that settlement materials are protected from discovery as matter of privilege, which is the main argument Entergy appears to attack in its motion. Mot. at 7-8. The United States accepts that it has discovery obligations even to evidence that would be inadmissible at trial under FRE 408. That is why the United States has worked with Entergy to identify and produce non-privileged documents from the DOE claims settlement files in response to Entergy's discovery requests. And the United States provided substantive responses to Entergy's requests for admission concerning settlement matters despite our concern that the admissions cannot be relied upon by Entergy at trial.

Our objection to certain deposition topics pursuant to FRE 408 is purely a relevance objection and proportionate objection this late in the discovery schedule. Evidence concerning DOE's settlement analyses cannot be introduced at trial. Nor has Entergy explained how such evidence might reasonably lead to the discovery of other admissible evidence, especially because fact discovery has already closed. The United States has already expended considerable efforts working cooperatively with Entergy to facilitate production of documents and responses to requests for admission on these same matters. Given the late date within the discovery schedule, it would appear to be a poor use of all party's resources to permit exploration of plainly inadmissible topics through a DOE 30(b)(6) deposition, especially because the scope of any non-

privileged topics is likely to be extremely narrow. Thus, we ask that the Court exclude the following topics from the DOE 30(b)(6) deposition on relevance and proportionality grounds:

Topics 8 and 9 to the extent Entergy asks about DOE's evaluation of the referenced settlement claims and recommendation to DOJ regarding settlement, and to the extent such testimony would not be precluded by the privileges discussed above, *supra* at 19-23.

Topic 12 to the extent Entergy asks about DOE's evaluation of specific settlement claims, and to the extent such testimony would not be precluded by the privileges discussed above, *supra* at 19-23.

Topic 22 to the extent Entergy asks about DOE's evaluation of specific settlement claims, and to the extent such testimony would not be precluded by the privileges discussed above, *supra* at 19-23.

## V. The Court Should Grant a Protective Order Concerning the Depositions of Mr. Espiritu and Ms. Barton Consistent With its Rulings on the 30(b)(6) Privileged Topics and the 30(b)(6) Topics Barred by FRE 408

In addition to the requested 30(b)(6) deposition, Entergy has also indicated that it intends to take individual depositions of Kurt Espiritu, a current DOE employee, and Constance Barton, a former DOE employee. The personal knowledge of these fact witnesses overlaps substantially with the proposed 30(b)(6) topics. Indeed, Mr. Espiritu will likely be one of DOE's designees in response to the 30(b)(6) topics noticed. Due the substantial likelihood of subject matter overlap among these depositions, the United States respectfully requests that the Court enter a protective order making clear that these two individual depositions will be governed by the rulings that the Court issues regarding the 30(b)(6) deposition in response to the United States' objections concerning privilege and FRE 408.

## CONCLUSION

For these reasons, we respectfully request that the Court deny Entergy's motion to compel and grant our cross-motion for protective order.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. MCCARTHY
Director

LISA L. DONAHUE
Assistant Director

s/Evan Wisser
EVAN WISSER
Senior Trial Counsel
NATALEE A. ALLENBAUGH
DANIEL D. FALKNOR
KRISTIN E. OLSON
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Telephone: 202-616-3682
Email: evan.wisser@usdoj.gov
*Attorneys for the United States*

Dated: September 1, 2026

Exhibit A

**From:** Charlie Ross
**To:** Wisser, Evan (CIV)
**Cc:** Samuel O Morris; Eric Langley; Robin Bromberg
**Subject:** [EXTERNAL] 30(b)(6) depo of DOE
**Date:** Thursday, July 9, 2026 4:11:44 PM
**Attachments:** Areas of Inquiry, DOE 30(b)(6) Deposition(3443215.3).docx

---

Evan:

Attached are plaintiffs' areas of inquiry for a 30(b)(6) deposition of DOE. I will be sending you some proposed dates in the next day or so.

Charlie

CHARLES E. ROSS
Attorney at Law Shareholder
P.O. Box 651
Jackson, MS 39205-0651
401 E. Capitol St. 600 Heritage Building
Jackson, MS 39201
P: 601.968.5562
F: 601.968.5593
cer@wisecarter.com

**Areas of Inquiry, DOE 30(b)(6) Deposition**

1. The DOE settlement program for spent nuclear fuel, including:

   -How DOE evaluates claims by utilities

   -The DOE standard for reasonableness

   -How DOE evaluates whether a claim is reasonable and the internal criteria used by DOE

   -The DOE standard settlement agreement forms, including how they were developed

   -The procedural steps in the standard settlement process.

   -DOE payments to spent nuclear fuel plaintiffs for dry fuel storage cask systems since 2010, including but not limited to reimbursements for Holtec FW systems.

2. Defendant's Responses and/or objections to Plaintiffs' First Consolidated Requests for Admission

3. Defendant's Responses and Objections to Plaintiffs' Second Consolidated Requests for Admission

4. Defendant's Responses to Plaintiffs' Interrogatories in Cause No. 23-78C and Cause No. 24-118C

5. The Government's Requests for Additional Information in Cause No. 23-78C and Cause No. 24-118C, and Plaintiff's responses thereto in each respective Cause No.

6. The Request for Information Process in these cases and other Spent Fuel cases. This request extends to the persons/entities that provided input as to the scope/content of the Requests for information in these cases.

7. Whether DOE agrees with the opinions of Defendant's experts with respect to Entergy's prices with Holtec under the 2020 GSA.

8. DOE's reimbursement of Exelon for casks purchased pursuant to the June 28, 2018, Purchase Order No. 658625, Rev. 0, document bates number HOLTEC-GG_00004200-00004216.

9. DOE's reimbursement of Susquehanna Nuclear, LLC (or any of its affiliates, subsidiaries, or parent companies) for casks purchased pursuant to the contract between Susquehanna Nuclear, LLC and Holtec, dated June 25, 2019, bates number HCS001-0057546.

10. Whether DOE performs a prudency review of prices and claims submitted by utilities in the settlement program, and if so, the standards for such review.

11. DOE's knowledge of whether nuclear utilities use non-bid negotiations with vendors as opposed to competitive bids, and the basis for such knowledge.

**Commented [EL1]:** Not sure I would include this one, but I don't have a strong opinion.

**Commented [EL2]:** We can make this more broad, and eliminate #10 below.

12. Whether DOE has approved claims in the settlement program, including but not limited to specific claims for cask costs, which are derived from vendor contracts entered into without a competitive bid process.

13. DOE facilities that use Holtec as a vendor, and for such facilities, the services provided by Holtec, and the quality of services provided.

14. Whether DOE reimburses utilities for cask loading in the settlement program

15. Whether DOE reimburses utilities for fuel sipping and visual inspections in the settlement program

16. Whether DOE has done an analysis of Plaintiffs' claims pertaining to FW casks and ancillaries purchased pursuant to the 2020 Holtec GSA, and if so, how such analysis was conducted, who conducted such analysis, and any documentation of such analysis.

17. Whether DOE has formed a belief or position as to the reasonableness of the prices for FW casks and ancillaries purchased by Plaintiffs from Holtec under the Holtec 2020 GSA, and if so, that opinion and how DOE arrived at such opinion.

18. DOE's views on the quality of dry fuel storage goods and services provided by Holtec International, NAC, and TN/Orano.

19. DOE's administration of the Standard Contract for Waterford 3 and Grand Gulf Nuclear Station, including but not limited to any amendments to the Standard Contact that would be necessary for Defendant to take canistered fuel from the sites.

20. DOE's document retention policies, including any DOE policies relating to any litigation hold issued in these cases.

21. DOE's defense to Plaintiffs' claims in these cases.

22. Any previous DOE challenges regarding the reasonableness of any vendor costs claimed by spent nuclear fuel plaintiffs in any spent nuclear fuel case based upon the circumstances of negotiation and execution of the underlying vendor contract.

23. Any desire, preference, direction, benefit or intention by DOE to delay the progress of these cases or to otherwise extend the period of time between filing and payment by Defendant of a judgment.

Exhibit B

**From:** Wisser, Evan (CIV)
**To:** "Charlie Ross"
**Cc:** Samuel O Morris; Eric Langley; Robin Bromberg
**Subject:** RE: 30(b)(6) depo of DOE
**Date:** Thursday, July 16, 2026 3:07:00 PM
**Attachments:** SFI Mississippi and Entergy Louisiana Letter re 30(b)(6) Topics 7.16.26.pdf

Charlie, Robin,

Attached is a letter outlining the United States' positions on the proposed 30(b)(6) topics you sent last week.

Thanks,
Evan

---

**From:** Charlie Ross <cer@wisecarter.com>
**Sent:** Thursday, July 9, 2026 4:10 PM
**To:** Wisser, Evan (CIV) <Evan.Wisser@usdoj.gov>
**Cc:** Samuel O Morris <smorri5@entergy.com>; Eric Langley <eric@langleybromberg.com>; Robin Bromberg <robin@langleybromberg.com>
**Subject:** [EXTERNAL] 30(b)(6) depo of DOE

Evan:

Attached are plaintiffs' areas of inquiry for a 30(b)(6) deposition of DOE. I will be sending you some proposed dates in the next day or so.

Charlie

CHARLES E. ROSS
Attorney at Law Shareholder
P.O. Box 651
Jackson, MS 39205-0651
401 E. Capitol St. 600 Heritage Building
Jackson, MS 39201
P: 601.968.5562
F: 601.968.5593
cer@wisecarter.com

**U.S. Department of Justice**
Civil Division

Tel: 202-616-3682
Fax: 202-307-0972
Evan.Wisser@usdoj.gov

*Washington, DC 20530*

July 16, 2026

By Email cer@wisecarter.com
Charles E. Ross
Wise Carter Child & Caraway, P.A.
401 East Capitol Street, Suite 600
Jackson, MS 39201

By Email robin@langleybromberg.com
Robin F. Bromberg
LANGLEY & BROMBERG LLC
2700 U.S. Highway 280, Suite 350E
Birmingham, AL 35223

Re: *Systems Fuels Inc. et. al., v. United States*, Fed. Cl. No. 23-78, and
*Entergy Louisiana v. United States*, Fed. Cl. No. 24-0118

Dear Mr. Ross and Ms. Bromberg,

I write in response to your July 9, 2026 email attaching proposed topics for a 30(b)(6) deposition of the U.S. Department of Energy. I am providing the United States' positions on each of the proposed topics.

At the outset, I note that many of your proposed topics relate to the process by which the United States resolves annual claims for breach of the Standard Contract under existing settlement agreements with utility plaintiffs. I want to provide a general explanation of the settlement process to avoid any confusion about our particular objections. For reference, I will refer to the language in the template settlement agreement we produced at HQR882-000001.

When a spent nuclear fuel plaintiff agrees to settle ongoing claims with the United States, the plaintiff agrees to resolve those claims through the process defined in section IV of the template agreement. HQR882-000002, sec. II; HQR882-000010-15, sec. IV. Under that process, the plaintiff submits annual claims to the DOE contracting officer. HQR882-000010-11, sec. IV.A. The DOE contracting officer reviews the claims and then makes a determination of allowable costs. HQR882-000012, sec. IV.B. The DOE contracting officer's determination is then submitted to the authorized representative of the Attorney General (typically the Associate Attorney General) for a final decision on whether to approve or disapprove the request for payment submitted by the plaintiff. HQR882-000012, sec. IV.C.1. The decision by the authorized representative of the Attorney General is a compromise settlement under 28 U.S.C. § 2414. If plaintiff disagrees with the settlement terms proposed by the authorized representative

of the Attorney General, then the plaintiff may choose to pursue its claim through binding arbitration. HQR882-000015-18, sec. V.

As relevant to your proposed 30(b)(6) topics, DOE has no authority to make any decisions regarding payment of claims submitted under the spent nuclear fuel settlement agreements. Decisional authority resides exclusively with the authorized representative of the Attorney General, typically the Associate Attorney General. Any input by DOE to the Attorney General's authorized representative regarding what claims to reimburse is privileged. *See Fed. Trade Comm'n v. Boehringer Ingelheim Pharms., Inc.*, 892 F.3d 1264, 1267 (D.C. Cir. 2018). And at no point does the Attorney General's authorized representative make any finding as to the allowability of any claimed costs. As defined in the settlement agreement, the Attorney General's authorized representative makes a settlement decision based on litigation risk through the binding arbitration process. At no point in the process does the Attorney General make any determination of cost "reasonableness" as contemplated by your proposed 30(b)(6) topics.

I am addressing your individual topics as follows:

1. **The DOE settlement program for spent nuclear fuel, including:**
   a. **How DOE evaluates claims by utilities**
   b. **The DOE standard for reasonableness**
   c. **How DOE evaluates whether a claim is reasonable and the internal criteria used by DOE**
   d. **The DOE standard settlement agreement forms, including how they were developed**
   e. **The procedural steps in the standard settlement process.**
   f. **DOE payments to spent nuclear fuel plaintiffs for dry fuel storage cask systems since 2010, including but not limited to reimbursements for Holtec FW systems**

DOE cannot produce any witness for topics 1(a) through 1(c). As discussed above, all decisions regarding the evaluation of spent nuclear fuel claims are made by the Attorney General's authorized representative. DOE has no authority to make any decision regarding utility claims under the standard contract. To the extent you seek testimony about DOE's input to the ultimate settlement decision by the Attorney General's authorized representative, that information is privileged.

Similarly, DOE cannot produce any witness for topic 1(d). The standard settlement agreement forms were finalized by the Department of Justice, and individual settlement agreements are executed by the Attorney General's authorized representative. DOE's input to DOJ regarding the settlement agreements is privileged.

DOE can produce a witness to testify about the general procedural steps for annual claims under spent nuclear fuel settlement agreements in response to topic 1(e).

While DOE can produce a witness in response to topic 1(f), the United States objects to this topic based upon the parties' prior discovery agreements. Last year, Entergy served discovery requests seeking documents related to claims under settlement agreements for dry fuel

storage cask systems. The parties agreed to narrow that request to only claims for Holtec FW systems, and the United States undertook extensive efforts to obtain permission from settling parties to disclose materials submitted in support of claims for Holtec FW dry fuel storage systems. Entergy did not seek, and the United States did not produce, documents related to other dry fuel storage systems. Any questioning under topic 1(f) should equally be limited to Holtec FW cask systems. In addition, the parties expended significant effort in agreeing to terms for admissions regarding reimbursements for Holtec FW systems. Any DOE witness will not be able to testify to any greater detail that what has been stated in our prior admissions without implicating privileged information. For that reason, I ask that you reconsider the utility of topic 1(f), in light of the United States' previous admissions.

**2. Defendant's Responses and/or objections to Plaintiffs' First Consolidated Requests for Admission**

No DOE witness can testify on this topic. The United States' responses to plaintiffs' requests for admission were prepared and signed by counsel for the United States. Any input by DOE is privileged.

**3. Defendant's Responses and Objections to Plaintiffs' Second Consolidated Requests for Admission**

No DOE witness can testify on this topic. The United States' responses to plaintiffs' requests for admission were prepared and signed by counsel for the United States. Any input by DOE is privileged.

**4. Defendant's Responses to Plaintiffs' Interrogatories in Cause No. 23-78C and Cause No. 24-118C**

DOE will identify a witness who can testify regarding Interrogatory numbers 5, 6, 7, and 16 in *SERI*, 23-78.

In addition, regarding *SERI* Interrogatory number 20, we have produced the relevant documents. Any DOE witness will not be able to testify to any greater detail than what has been stated in our prior admissions without implicating privileged information. For that reason, I ask that you reconsider the utility of inquiring further into the United States' response to Interrogatory number 20 in light of the United States' previous admissions

No DOE witness can testify on the remaining Interrogatories for the following reasons:

- In *SERI*, 23-78, Interrogatory numbers 1, 2, 3, 4, 10, 11, 12, 13, 15, 19, and 21 were objected to by counsel and no substantive response was provided.

- In *SERI*, 23-78, Interrogatory numbers 8, 9, 14, 17, and 18 were contention interrogatories that asked about the United States' anticipated litigation positions. As such, these interrogatories were responded to by counsel alone.

- In *Entergy Louisiana*, 24-118, Interrogatory numbers 2, 5, 6, and 7 were objected to by counsel and no substantive response was provided.

- In *Entergy Louisiana*, 24-118, Interrogatory numbers 1, 3, and 4 were contention interrogatories that asked about the United States' anticipated litigation positions. As such, these interrogatories were responded to by counsel alone.

**5. The Government's Requests for Additional Information in Cause No. 23-78C and Cause No. 24-118C, and Plaintiff's responses thereto in each respective Cause No.**

No DOE witness can testify on this topic. The United States' requests for additional information in these cases were prepared and signed by counsel for the United States. Any input by DOE is privileged. Nor would any DOE witness have information regarding plaintiffs' responses to the United States' requests for additional information.

**6. The Request for Information Process in these cases and other Spent Fuel cases. This request extends to the persons/entities that provided input as to the scope/content of the Requests for information in these cases.**

No DOE witness can testify on this topic. The request for information process is an informal discovery tool used by Department of Justice attorneys to help efficiently manage discovery in spent nuclear fuel cases. DOE does not determine discovery strategy in spent nuclear fuel cases, and any input by DOE to DOJ attorneys regarding discovery is privileged.

**7. Whether DOE agrees with the opinions of Defendant's experts with respect to Entergy's prices with Holtec under the 2020 GSA.**

No DOE witness can testify on this topic. DOE has not independently analyzed the opinions presented by the United States' experts in these cases. Thus, DOE has not developed any views regarding those opinions.

**8. DOE's reimbursement of Exelon for casks purchased pursuant to the June 28, 2018, Purchase Order No. 658625, Rev. 0, document bates number HOLTEC-GG_00004200-00004216.**

The scope of this topic is unclear. The United States provides the following objections, based on potential interpretations of this topic:

- To the extent this topic seeks testimony regarding the decision by the United States to reimburse Exelon for casks purchased pursuant to the identified contract, and the reasons for that decision, no DOE witness can testify on that topic. The decision was made by the Attorney General's authorized representative, and any DOE input to that decision is privileged.

- To the extent this topic seeks testimony regarding the fact of the United States' reimbursement, that fact has been admitted to through our responses to plaintiffs'

request for admission. Our admission eliminates the need for any further proof on that point through testimony or documents. *E.g. Bouchard v. United States*, 241 F.R.D. 72, 75 (D. Me. 2007); *Burns v. Phillips*, 50 F.R.D. 187, 188 (N.D. Ga. 1970); *Longoria v. Cnty. of Dallas, Texas*, No. 3:14-CV-3111-L, 2016 WL 6893625, at *7 (N.D. Tex. Nov. 22, 2016).

- Beyond those two objections, evidence regarding prior spent nuclear fuel settlements is *per se* inadmissible in these cases. *Power Authority of N.Y. v. United States*, 62 Fed. Cl. 376, 378 (Fed. Cl. 2004). For that reason, this topic is not reasonably calculated to lead to the discovery of admissible evidence.

For each of these reasons, DOE will not produce a witness to testify in response to topic 8.

**9. DOE's reimbursement of Susquehanna Nuclear, LLC (or any of its affiliates, subsidiaries, or parent companies) for casks purchased pursuant to the contract between Susquehanna Nuclear, LLC and Holtec, dated June 25, 2019, bates number HCS001-0057546.**

For the reasons stated in response to topic 8, DOE will not produce a witness to testify in response to topic 9.

**10. Whether DOE performs a prudency review of prices and claims submitted by utilities in the settlement program, and if so, the standards for such review.**

No DOE witness can testify on this topic. Any such analysis by DOE would be in support of the settlement decision made by the Attorney General's authorized representative and thus is privileged.

**11. DOE's knowledge of whether nuclear utilities use non-bid negotiations with vendors as opposed to competitive bids, and the basis for such knowledge.**

DOE will identify a witness who can testify on this topic. To be clear, DOE's knowledge on this point is limited to the information that utility companies choose to provide in connection with their settlement claims. DOE has no basis upon which to develop a view as to industry practices as a whole.

**12. Whether DOE has approved claims in the settlement program, including but not limited to specific claims for cask costs, which are derived from vendor contracts entered into without a competitive bid process.**

Evidence regarding prior spent nuclear fuel settlements is *per se* inadmissible in these cases. *Power Authority of N.Y. v. United States*, 62 Fed. Cl. 376, 378 (Fed. Cl. 2004). For that reason, this topic is not reasonably calculated to lead to the discovery of admissible evidence, and DOE will not produce a witness to testify in response to topic 12.

**13. DOE facilities that use Holtec as a vendor, and for such facilities, the services provided by Holtec, and the quality of services provided.**

No DOE witness can testify on this topic because no DOE facility uses Holtec as a vendor, as previously discussed in connection with plaintiffs' written discovery requests.

**14. Whether DOE reimburses utilities for cask loading in the settlement program**

The United States objects to this topic to the extent it seeks testimony regarding specific prior settlement decisions, evidence of which is *per se* inadmissible in these cases. *Power Authority of N.Y. v. United States*, 62 Fed. Cl. 376, 378 (Fed. Cl. 2004). Notwithstanding this objection, I direct your attention to section III.C.2.b. of the template settlement agreement, HQR882-000006, which includes "costs to load fuel into and to transport canisters and casks for storage at the ISFSI" as one of the "categories of costs expressly designated as allowable," subject to the reservations identified in section III.C.2, HQR882-000005.

Absent further clarification from plaintiffs, DOE will not identify a witness in response to this request.

**15. Whether DOE reimburses utilities for fuel sipping and visual inspections in the settlement program**

The United States objects to this topic to the extent it seeks testimony regarding specific prior settlement decisions, evidence of which is *per se* inadmissible in these cases. *Power Authority of N.Y. v. United States*, 62 Fed. Cl. 376, 378 (Fed. Cl. 2004). Notwithstanding this objection, I direct your attention to section III.C.3.g. of the template settlement agreement, HQR882-000009, which includes "costs paid for spent fuel characterization" as one of the "categories of costs expressly designated as unallowable."

Absent further clarification from plaintiffs, DOE will not identify a witness in response to this request.

**16. Whether DOE has done an analysis of Plaintiffs' claims pertaining to FW casks and ancillaries purchased pursuant to the 2020 Holtec GSA, and if so, how such analysis was conducted, who conducted such analysis, and any documentation of such analysis.**

No DOE witness can testify on this topic because no DOE personnel have performed such an analysis. The United States' litigation positions are based on the evidence and testimony provided by other parties and by the previously-produced analysis of United States' experts.

**17. Whether DOE has formed a belief or position as to the reasonableness of the prices for FW casks and ancillaries purchased by Plaintiffs from Holtec under the Holtec 2020 GSA, and if so, that opinion and how DOE arrived at such opinion.**

No DOE witness can testify on this topic because no DOE personnel have performed such an analysis. The United States' litigation positions are based on the evidence and testimony provided by other parties and by the previously-produced analysis of United States' experts.

**18. DOE's views on the quality of dry fuel storage goods and services provided by Holtec International, NAC, and TN/Orano.**

No DOE witness can testify on this topic because DOE as a whole has no view on the quality of dry fuel storage goods and services provided by Holtec International, NAC, and TN/Orano.

**19. DOE's administration of the Standard Contract for Waterford 3 and Grand Gulf Nuclear Station, including but not limited to any amendments to the Standard Contact that would be necessary for Defendant to take canistered fuel from the sites.**

DOE will identify a witness who can testify on this topic. However, I want to clarify that DOE has not developed any view as to what amendments, if any, may be necessary to take canistered fuel from Waterford 3 and Grand Gulf. That decision depends in part on whether the plants will still have an operational spent fuel pool at the time of transfer, which implicates the technical feasibility of any fuel transfer and DOE's obligation to provide a cask suitable for use at the site. Because that information is unknown at this time, the United States is not challenging any of plaintiffs' claimed costs on the assumption that DOE would accept canistered fuel from the sites.

**20. DOE's document retention policies, including any DOE policies relating to any litigation hold issued in these cases.**

DOE will identify a witness who can testify on this topic. However, it may be more efficient for DOE to produce the relevant documents in response to an RFP and describe their document retention processes in response to an interrogatory. DOE's document retention policies are managed by the General Counsel's Office and the Office of the Chief Information Officer. As such, any witness would be relying on those same institutional documents to respond to your questions.

**21. DOE's defense to Plaintiffs' claims in these cases.**

No DOE witness can testify on this topic. The United States' defenses in these cases are evaluated and developed by counsel for the United States. Any input by DOE is privileged.

Plaintiff's have already served contention interrogatories regarding the United States' defenses, to which we have responded. I reiterate our prior written commitment that we will supplement those interrogatory responses as appropriate at the close of discovery.

Nonetheless, to the extent there remains any ambiguity about the United States' defenses to plaintiffs' claims, I reiterate them here at a summary level.

For plaintiffs' claims for recovery of costs incurred to acquire dry fuel storage cask systems from Holtec, the United States contends that Entergy's sole-source justification document was purposefully falsified to support its claim. As such, the United States contends that plaintiffs' claims are forfeited in full due to attempted fraud under 28 U.S.C. § 2514. That legal contention is supported by the documents produced by Entergy and Holtec and the testimony from the relevant Entergy and Holtec witnesses. The United States does not intend to rely on any DOE documents or witnesses in support of this defense. As we have previously discussed, the United States has deferred filing our motion for leave to amend our answer to state this defense [redacted].

Beyond our fraud defense, the United States also contends that the price Entergy chose to pay for Holtec's dry fuel storage systems was not reasonably foreseeable and was not caused by DOE's breach. As such, Entergy cannot meet its burden to prove its claim to recover its expenses to purchase the dry fuel storage systems. Alternatively, the cost paid for Holtec's dry fuel storage systems was unreasonably high. Those legal contentions are supported by the documents produced by Entergy and Holtec, the testimony from the relevant Entergy and Holtec witnesses, and the United States' expert reports. The United States does not intend to rely on any DOE documents or witnesses in support of those defenses.

Finally, for claimed costs other than the costs to acquire the dry fuel storage systems, the United States has itemized the costs we dispute in the report of Mark Gmyr. For each of those disputed costs, we contend that plaintiffs cannot meet their burden to prove that the claimed costs were actually incurred, that the claimed costs were incurred as a consequence of DOE's breach, or that the claimed costs were reasonably foreseeable at the time of contracting. Alternatively, the claimed costs did not represent reasonable efforts at mitigating the damages from DOE's breach. Those legal contentions are supported by the documents produced by Entergy and Holtec, the testimony from the relevant Entergy and Holtec witnesses, and the United States' expert reports. The United States does not intend to rely on any DOE documents or witnesses in support of those defenses.

**22. Any previous DOE challenges regarding the reasonableness of any vendor costs claimed by spent nuclear fuel plaintiffs in any spent nuclear fuel case based upon the circumstances of negotiation and execution of the underlying vendor contract.**

To the extent this topic is referring to settlement claims, no DOE witness can testify on this topic. As explained above, there is no formal determination of the reasonableness of vendor costs when the United States agrees to pay costs in settlement. Further, evidence regarding prior spent nuclear fuel settlements is *per se* inadmissible in these cases. *Power Authority of N.Y. v. United States*, 62 Fed. Cl. 376, 378 (Fed. Cl. 2004). For that reason, this topic is not reasonably calculated to lead to the discovery of admissible evidence. And any such analysis by DOE would be in support of the settlement decision made by the Attorney General's authorized representative and thus is privileged.

To the extent this topic is referring to litigated claims, no DOE witness can testify on this topic. The United States' defenses in spent nuclear fuel cases are evaluated and developed by counsel for the United States. Any input by DOE is privileged.

**23. Any desire, preference, direction, benefit or intention by DOE to delay the progress of these cases or to otherwise extend the period of time between filing and payment by Defendant of a judgment.**

No DOE witness can testify on this topic because, as previously stated in response to plaintiffs' interrogatories, there is no desire, preference, direction, benefit, or intention by DOE or any part of the United States government to delay the progress of these cases or to otherwise extend the period of time between filing and payment by Defendant of a judgment. The United States has made no litigation decisions in these cases based on the considerations contained in this request. The discovery delays in these cases have been caused by plaintiffs' choice to attempt to recover plainly unjustifiable costs, plaintiffs' failure to impose reasonable litigation holds to ensure access to relevant documents in discovery, and plaintiffs' persistent failures to undertake reasonable discovery efforts consistent with its obligations under the Court's rules.

In sum, DOE intends to present a witness or combination of witnesses who can testify to topics 1(e), 1(f), 11, 19, and 20, and to the relevant portions of topic 4. DOE does not intend to present a witness to testify to the remaining topics.

Sincerely,
*/s/Evan Wisser*
Evan Wisser

Exhibit C

**From:** Wisser, Evan (CIV)
**To:** Charlie Ross
**Cc:** Falknor, Daniel D. (CIV); Allenbaugh, Natalee (CIV); Donahue, Lisa (CIV); Morris, Samuel O; Robin Bromberg; Beau M. Bettiga; Eric Langley; Jennifer Scott; LIT, SNF (CIV)
**Subject:** RE: depositions
**Date:** Monday, August 24, 2026 3:19:00 PM

---

Charlie, assuming you want to ask them about DOE settlement-related matters, we're going to have the same Rule 408 and privilege issues that we asserted in connection with your 30(b)(6) notice. What we'll probably do is when we respond to your motion to compel on the 30(b)(6) notice, I'll include a cross-motion for protective order on the same matters as related to these individual witnesses. That way we can have a ruling from the court on the legal questions as to all possible depositions.

I'll go ahead and ask Ms. Barton and Mr. Espiritu about their availability, but we would not intend to make them available until after the court rules on the discovery motions. I won't object if that requires taking their depositions outside the formal close of discovery.

Thanks,
Evan

---

**From:** Charlie Ross <cer@wisecarter.com>
**Sent:** Friday, August 21, 2026 4:07 PM
**To:** Wisser, Evan (CIV) <Evan.Wisser@usdoj.gov>
**Cc:** Falknor, Daniel D. (CIV) <Daniel.D.Falknor@usdoj.gov>; Allenbaugh, Natalee (CIV) <Natalee.Allenbaugh@usdoj.gov>; Donahue, Lisa (CIV) <Lisa.Donahue@usdoj.gov>; Morris, Samuel O <smorri5@entergy.com>; Robin Bromberg <robin@langleybromberg.com>; Beau M. Bettiga <bmb@wisecarter.com>; Eric Langley <eric@langleybromberg.com>; Jennifer Scott <jhs@wisecarter.com>
**Subject:** [EXTERNAL] depositions

Evan, plaintiffs do want to depose Connie Barton and Kurt Espiritu, both identified in the Government's initial disclosures.

We need to discuss dates.

Charlie

**CHARLES E. ROSS**
ATTORNEY AT LAW & SHAREHOLDER
P.O. Box 651
Jackson, MS 39205-0651
401 E Capitol St. 600 Heritage Building
Jackson, MS 39201

P:601.968.5562
F:601.968.5593
cer@wisecarter.com

WISE CARTER

The preceding e-mail is privileged and confidential and is intended only for the named addressee. If you received this message in error, please delete it and notify the sender by return e-mail or by phone at the numbers noted above.