**Redacted Version**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**SYSTEM ENERGY RESOURCES, INC.,** ***et al.*****,**

**Plaintiffs,**

**v.**

**THE UNITED STATES,**

**Defendant,**

**and**

**HOLTEC INTERNATIONAL, LLC,**

**Intervenor.**

---

**ENTERGY LOUISIANA, LLC,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant,**

**and**

**HOLTEC INTERNATIONAL, LLC,**

**Intervenor.**

**No. 23-78C and 23-118**
**(Consolidated)**

**Judge Holte**

**PLAINTIFFS' REPLY IN SUPPORT OF CROSS MOTION TO STRIKE SUPPLEMENTAL EXPERT REPORT OF DR. GLENN GEORGE**

[redacted]

## TABLE OF CONTENTS


**I. THE GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION TO STAY IS UNTIMELY AND UNAVAILING ..... 3**

**II. DR. GEORGE'S SUPPLEMENTAL REPORT IS IMPERMISSIBLE AND SHOULD BE STRICKEN ..... 4**

A. Plaintiffs' Awareness of the Deficiencies in Dr. George's Initial Report Does Not Give Him License to Offer the Opinions in the Supplemental Report ..... 4

B. Dr. George's Supplemental Report Fails to Satisfy the Requirements of RCFC 26(e)(2) ..... 6

1. Dr. George's Supplement is Not Based on "New" Information ..... 6

2. The Government Concedes that Dr. George's Supplement Improperly Bolsters His Original Report ..... 8

3. The Government's Discussion of *NorthStar Vermont Yankee, LLC v. United States* is Irrelevant ..... 10

**III. STRIKING DR. GEORGE'S REPORT REMAINS THE APPROPRIATE REMEDY FOR THE GOVERNMENT'S DISCOVERY MISCONDUCT ..... 11**

A. The Government's Bad-Faith Conduct and Inadequate Explanation for its Conduct Warrant Exclusion of the Supplemental Report ..... 12

B. Permitting the Supplemental Report Would Prejudice Plaintiffs ..... 14

C. This Prejudice Cannot Be Cured by an Opportunity to Depose Dr. George ..... 16

D. Permitting the Supplemental Report Would Disrupt the Court's Schedule ..... 18

E. The Government Makes No Showing Based on the Remaining Factors ..... 18

**IV. CONCLUSION ..... 18**

[redacted] [redacted] [redacted] [redacted]

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aid for Women v. Foulston*, No. 03-1353-JTM, 2005 WL 6964192 (D. Kan. July 14, 2005)...9, 16

*BearBox LLC v. Lancium LLC*, 125 F.4th 1101 (Fed. Cir. 2025) ....................12

*Campbell v. United States*, 470 F. App'x 153 (4th Cir. 2012) ....................8

*Cochran v. Brinkmann Corp.*, No. 1:08-cv-1790-WSD, 2009 WL 4823858 (N.D. Ga. Dec. 9, 2009), *aff'd sub nom. Cochran v. The Brinkmann Corp.*, 381 F. App'x 968 (11th Cir. 2010) ....................9

*Dandy v. Ethicon Women's Health & Urology*, 579 F. Supp. 3d 625 (D.N.J. 2022)....12, 14, 15, 18

*Deseret Mgmt. Corp. v. United States*, 97 Fed. Cl. 272 (2011) ....................10, 17

*E.E.O.C. v. Freeman*, 778 F.3d 463 (4th Cir. 2015)....................8

*Est. of Cape v. United States*, No. 11-C-0357, 2013 WL 4522933 (E.D. Wis. Aug. 27, 2013) .4, 18

*Familias Unidas Por La Educación v. El Paso Indep. Sch. Dist.*, No. EP-20-CV-170-DB, 2022 WL 2906505 (W.D. Tex. July 22, 2022)....................8, 9

*Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710 (11th Cir. 2019) ....................2, 8

*In re Bear Stearns Cos., Inc. Sec., Derivatives, & ERISA Litig.*, 263 F. Supp. 3d 446 (S.D.N.Y. 2017) ....................4, 18

*Louisiana-Pac. Corp. v. United States*, 2 Cl. Ct. 743 (1983)....................3

*Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x 496 (9th Cir. 2009)....................2

*MF Global Holdings, Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558 (S.D.N.Y. 2017) ....................9

*NorthStar Vermont Yankee, LLC v. United States* ....................11

*Petrone v. Werner Enters., Inc.*, 940 F.3d 425 (8th Cir. 2019)....................7

*PlayUp, Inc. v. Mintas*, 635 F. Supp. 3d 1087 (D. Nev. 2022)....................3

*Prakhin v. United States*, 164 Fed. Cl. 440 (2023) ....................16

*Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377 (Fed. Cir. 2013) ....................5

*Science Applications Int'l Corp. v. United States*, 169 Fed. Cl. 346 (2024)................................5, 6

*Science Applications Int'l Corp. v. United States*, 169 Fed. Cl. 643 (2024)......................... *passim*

*Scott Timber, Inc. v. United States*, 93 Fed. Cl. 221 (2010) ..................................................5, 6, 10

*Sparton Corp. v. United States*, 77 Fed. Cl. 1 (2007) ........................................................................5

*Zoltek Corp. v. United States*, 71 Fed. Cl. 160 (2006).............................................................11, 15

**<u>Rules</u>**

RCFC 7.2(a)(2) ........................................................................................................................3

RCFC 26(a)(2) ....................................................................................................................... *passim*

RCFC 26(a)(2)(E) ...............................................................................................................10

RCFC 26(e)............................................................................................................................ *passim*

Fed. R. Civ. P. 26.....................................................................................................................11

The Government's arguments against Plaintiffs' motion to strike are a study in contradiction. Dr. George's supplemental report cannot simultaneously provide "corrective information" to try and remedy aspects of his initial report that are "incomplete or incorrect,"[1] and also reflect "supplementation that is not new or material" but offered only "in an abundance of caution." Dkt. 192 (Resp. to Pls. Cross-Mot. to Strike) at 2. The Government's response twists itself into knots in search of a coherent rationale for permitting Dr. George's untimely and improper supplement—a rationale that simply does not exist.

As Plaintiffs have amply demonstrated, the flaws and inaccuracies in Dr. George's opinions—which were exposed through the adversarial process—do not provide a basis for him to supplement his report. The Government's argument, that if Dr. George does not have a duty to supplement, he "is free to testify on these matters regardless of the existence of his supplemental report," is incorrect for two reasons.

***First, Dr. George did not have a duty to supplement his report because Rule 26(e) does not permit the supplement that Dr. George offered.*** Rule 26(e) requires supplementation or correction only "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." RCFC 26(e)(1)(a). Dr. George's supplemental analysis and opinions rest exclusively on data that was already in his report, in the Government's possession, and/or publicly available. The manner in which Plaintiffs utilized the original dataset and Dr. George's original regression model during Dr. George's deposition is not "new" information providing a basis for supplementation under RCFC 26(e)(1). And the Government's representation that "all Dr. George has done is show that his analyses and opinions remain exactly the same, notwithstanding the critiques leveled by Entergy" is patently false. Dkt. 192 at 7. To

[1] *See* Dkt. 178 (Gov. Mot. to Stay) at 2 (citing Fed. R. Ct. Fed. Cl., "RCFC," 26(e)).

[redacted]

remedy deficiencies identified by Plaintiffs at his deposition, Dr. George's supplemental report develops a new model, uses new variables, and reaches new mathematical results—all based on old information. *See* Dkt. 183 (Pls. Resp. to Mot. to Stay and Cross-Motion to Strike) at 9-11. The Government concedes it has improperly used Dr. George's supplement to "bolster a defective or problematic expert witness report" in response to information exposed during the discovery process,[2] a strategy courts have held to be an "abuse" of Rule 26(e). Dr. George's supplement should be stricken for this reason alone.

***Second, the Government completely ignores the fact that Dr. George's supplement is untimely.*** Under Rule 26(a)(2), Dr. George was required to provide a report setting forth "a complete statement of all [his] opinions . . . and the basis and reasons for them" prior to the court-ordered deadline of May 20, 2026, for his report. *See* Dkt. 151 (Court Order of May 6, 2026). Dr. George instead offered his supplemental opinion on September 18, after Plaintiffs' rebuttal deadline had already passed and after Plaintiffs already deposed him. *See* NON-PDF Order of Aug. 13, 2026. The Government made no effort to seek the Court's permission to supplement and instead took the position that it was automatically entitled to supplement under Rule 26(e). *See generally* Dkt. 183 (Resp. to Mot. to Stay), Ex. A. It is well established that RCFC 26(e) "creates a duty to supplement, not a right." *Science Applications Int'l Corp. v. U.S.*, 169 Fed. Cl. 643, 673 (2024) (*quoting Luke v. Fam. Care and Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009)). Dr. George cannot simply supplement his opinions on the Government's preferred schedule.

As it relates to Dr. George, the Government's disregard for Court-ordered deadlines and rules is, unfortunately, pervasive. The Government concedes that there is no rule dictating the

---

[2] *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 719 (11th Cir. 2019) (citations omitted).

timing of motions to exclude expert testimony. Dkt. 192 at 3. Yet rather than respond to Plaintiffs' Motion to Exclude Dr. George's testimony, the Government moved for a stay to delay its resolution. *See* Dkt. 178. The Court never granted that request, and so the Court's deadline remains in effect. *See Louisiana-Pac. Corp. v. United States*, 2 Cl. Ct. 743, 746 (1983) ("[T]he filing of a motion for extension does not serve to toll the scheduled due date nor does it automatically serve to extend that due date until such time as the court rules on the extension motion."); *PlayUp, Inc. v. Mintas*, 635 F. Supp. 3d 1087, 1094 (D. Nev. 2022) ("It is also axiomatic that the filing of a motion to stay does not impact the obligation to proceed; only an order granting such relief imposes a stay."). Because the Government has failed to file a timely opposition to the Motion to Exclude (Dkt. 176), that motion should be granted as unopposed, with the result that Dr. George's supplement must also be stricken.

In sum, the Government has not offered any justification, much less carried its burden, to demonstrate that Dr. George's untimely supplement should be permitted. Instead, as detailed below, the Government relies on manufactured "concessions" and inapposite case law to distract from its incoherent legal positions and the impropriety of Dr. George's supplemental report. The Court should grant Plaintiffs' Cross-Motion to Exclude Dr. George's supplemental report.

## I. THE GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION TO STAY IS UNTIMELY AND UNAVAILING

Consistent with the Government's pattern of disregarding deadlines, the Government's Reply on its Motion to Stay is untimely and should be disregarded. Under RCFC 7.2(a)(2), "[a] reply to a response or an objection may be filed within 7 days after service of the response or objection." Plaintiffs served their response to the Government's motion to stay on September 24, 2026, making the Government's reply due October 1, 2026. *See* Docket Text for Dkt. 183. Nonetheless, the Government waited until October 8 to file its reply (Dkt. 192). Given the absence

of consent, permission, or justification for this belated filing, the Court should disregard it. Moreover, the Government's Motion to Stay is, at this point, moot, as the response deadline for Plaintiffs' Motion to Exclude passed weeks ago without the Court granting the requested stay.

Plaintiffs' Motion to Exclude (Dkt. 176) should be granted as unopposed, and, because there is no prior admissible opinion to supplement, Dr. George's supplemental report should be stricken. See e.g., *Est. of Cape v. United States*, No. 11–C–0357, 2013 WL 4522933, at *5 (E.D. Wis. Aug. 27, 2013) ("Because the court finds that Szidon's October 2012 report must be excluded there is nothing . . . to supplement."); *In re. Bear Stearns Cos., Inc. Sec., Derivatives, & ERISA Litig.*, 263 F. Supp. 3d 446, 452 (S.D.N.Y. 2017) (striking "supplemental" report that constituted an "attempt to resuscitate Finnerty's [previously excluded] report [and] is improper").

## II. DR. GEORGE'S SUPPLEMENTAL REPORT IS IMPERMISSIBLE AND SHOULD BE STRICKEN

### A. Plaintiffs' Awareness of the Deficiencies in Dr. George's Initial Report Does Not Give Him License to Offer the Opinions in the Supplemental Report

The Government suggests that Plaintiffs somehow conceded that because "the matters addressed in Dr. George's supplemental report were already known to Entergy," the Government has license to supplement his opinions without meeting Rule 26(e)'s requirements. Dkt. 192 at 6. The Government is mistaken as to both the existence of any concession and the legal consequences of Plaintiffs' supposed "knowledge."[3]

From the outset, Plaintiffs maintained that an expert may supplement his report under

[3] The factual premise of the Government's argument—that "the matters addressed in Dr. George's supplemental report were already known to Entergy"—is likewise incorrect. Dkt. 192 at 6 (citing Dkt. 183 at 8). The portion of Plaintiffs' brief cited by the Government says only that Plaintiffs were "aware of the deficiencies raised at Dr. George's deposition" because they raised those deficiencies. *See* Dkt. 183 at 8. By contrast, Plaintiffs had no way of knowing what revisions Dr. George would make to address his Report's "deficiencies" nor what "matters" his new opinions would cover.

[redacted]

RCFC 26(e) only "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, *and* if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Dkt. 183 at 17 (quoting *Science Applications Int'l Corp. v. United States*, 169 Fed. Cl. at 673). No part of Plaintiffs' argument or cited caselaw suggests—as the Government does—that an expert is free to testify *without a supplement* on any "matter" he likes, provided the "matters addressed in [that testimony] were already known to" the opposing party. Rather, RCFC 26(a)(2) requires that expert reports contain "a complete statement of all opinions the [expert] witness will express and the basis or reasons for them," along with "the facts and data considered by the witness in forming them." *Sparton Corp. v. United States*, 77 Fed. Cl. 1, 4 (2007) (discussing this rule). Consistent with RCFC 26(a)(2), an expert generally "may not testify to subject matter beyond the scope of the witness's expert report[.]" *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013).

Nor do the cases cited in the Government's brief endorse its backwards view of the RCFC's expert disclosure requirements. Unlike the present case, neither *Science Applications International Corp. v. United States*, 169 Fed. Cl. 346, 356-57 (2024), nor *Scott Timber, Inc. v. United States* 93 Fed. Cl. 221, 227 (2010), involved a dispute over the scope of the corrections Rule 26(e) permits. Rather, that *Science Applications* opinion held that a defendant's legal theory was a proper subject for an otherwise timely rebuttal report because the defendant had previously given notice of its intent to pursue the theory its expert discussed. 169 Fed. Cl. at 356-57. And *Scott Timber* held that the plaintiff could call a second expert disclosed 18 days after its expert disclosure deadline for the limited purpose of "splitting" work assigned to its original expert "into two halves." 93 Fed. Cl. at 227. In contrast to this case, the *Scott Timber* plaintiff did not seek to correct prior reports, nor

[redacted]

to address errors an opposing party had identified. *Id.* (noting the "projected expert opinion and testimony introduce no new topics or methodology to the case").

### B. Dr. George's Supplemental Report Fails to Satisfy the Requirements of RCFC 26(e)(2)

Alternatively, the Government argues that Dr. George's supplement satisfies Rule 26(e)'s requirements because (1) "Entergy concedes that it was not improper for Dr. George to produce a supplemental report in response to that information which was newly provided by Entergy," (2) Dr. George's supplement did not change his ultimate opinions, and (3) the Government's actions in this case are (allegedly) "less prejudicial" than actions Plaintiffs took in a prior, unrelated case. *See* Dkt. 192 at 6–9. The Government is wrong on all counts.

#### 1. Dr. George's Supplement is Not Based on "New" Information

In response to Plaintiffs' arguments, the Government now asserts that only one piece of evidence, the alternate regressions presented by Plaintiffs to Dr. George at his deposition, is "new" and therefore, potentially capable of supporting a Rule 26(e) supplement. Dkt. 192 at 6 ("Entergy's assertion that Dr. George was not responding to new information is incorrect with respect to one portion of his supplemental report. In Section III.F., ECF 183-1, ¶¶ 52-59, Dr. George responded to an alternate regression that he was presented with for this first time at his deposition."). These regression results neither provide "new" information nor support the sweeping revisions to Dr. George's analysis presented in his supplemental report.

Contrary to the Government's claim, the regression results presented to Dr. George at his deposition could have been performed based on the information he had when he issued his initial report. All the data and the regression model used to generate these alternative results were included in Dr. George's initial report. *See* Dkt. 176, Ex. B (Corrected Report of Glenn R. George) at ¶ 39 (representing that Dr. George's original dataset was "comprehensive"). The only changes

Plaintiffs made were to reclassify certain lower price observations to be included in Dr. George's "outlier" category. *See generally* Dkt. 176 at 23-26 (discussing these changes and citing pertinent excerpts of Dr. George's deposition). In so doing, Plaintiffs demonstrated that Dr. George's regression model generated statistically significant results for his "outlier" category even when it included low price observations inconsistent with his hypothesis that "outliers" were high priced. Nothing prevented Dr. George from doing this analysis himself. His failure to do so does not provide a basis for supplementing under Rule 26(e). *See Petrone v. Werner Enter., Inc.*, 940 F.3d 425, 435 (8th Cir. 2019) (excluding supplemental expert report where "nothing precluded plaintiffs' expert from recognizing the flaws in his original report; he simply failed to do so") (cleaned up).

Moreover, Dr. George's changes extend far beyond even this allegedly "new" information, including an analysis of additional price data points drawn from old information (Dkt. 176, Ex. B at ¶ 39; Dkt. 183, Ex. A (Supplemental Report) at Section II.A); new variables that are based on a re-examination of contracts and other documents he already had and publicly available NRC data (Dkt. 183, Ex. A at Section III.C); and citations to academic literature Dr. George could have cited the first time around (Dkt. 183, Ex. A at Section II.C). None of this information is even arguably "new"—but it informs the bulk of the improper supplement.

The Government's reliance on the supplements provided by its experts, Mssrs. Gmyr and Maret is misplaced. Before Mr. Gmyr's deposition, Plaintiffs produced new documents not available to these experts when they authored their initial reports. Plaintiffs then did not oppose their supplementation to address this new information. None of those circumstances apply to Dr. George: there is no "new" information, Plaintiffs have opposed his effort to file a supplement, and it was served without leave after the Court-ordered deadlines passed. The Court's inquiry can end

here.

2. The Government Concedes that Dr. George's Supplement Improperly Bolsters His Original Report

While the Government argues that Dr. George's supplemental report should be permitted because his ultimate conclusions do not change, that is not the relevant standard for Rule 26(e) supplementation and in making this argument, the Government mischaracterizes the record.

The Government concedes, as it must, that "a party cannot, through a supplement, introduce new expert opinions or analyses or to fix [*sic.*] a prior analysis," and that Dr. George's supplemental report reflects a "modified analysis" that uses "alternative data points and additional variables that were raised during his deposition." Dkt. 192 at 7. Nonetheless, it insists that Dr. George's "re-run" is permissible because "[i]n every instance, [Dr. George] concluded that the substitution of data points or variables did not materially affect the outcome of that analysis or his overall opinions." *Id.*

As the Government's own statements acknowledge, however, the issue is not whether Dr. George's changed his ultimate opinions. Rather, a supplement exceeds the scope of Rule 26(e) if it reflects "additional" work designed to "bolster" an expert's original conclusions or deflect an opponent's criticism—as overwhelming authority shows.[4]

[4] *See, e.g.*, *Guevara*, 920 F.3d at 719 ("[A] party cannot abuse Rule 26(e) to merely **bolster** a defective or problematic expert witness report.") (emphasis added) (citation omitted); *E.E.O.. v. Freeman*, 778 F.3d 463, 467 n.7 (4th Cir. 2015) (Rule 26(e) does not provide "a loophole" for a party revises its expert "disclosures in light of . . . challenges to the analysis and conclusions therein.") (cleaned up); *Campbell v. United States*, 470 F. App'x 153, 157 (4th Cir. 2012) ("To construe Rule 26(e) supplementation to apply whenever a party wants **to bolster** or submit additional expert opinions would wreak havoc in docket control and amount to unlimited expert opinion preparation.") (cleaned up) emphasis added); *Science Applications Int'l Corp.*, 169 Fed. Cl. at 673 ("A party may not sua sponte misapply Rule 26(e)(1) to revise and **strengthen** an expert's previously disclosed opinions to deflect credible challenges from an opponent.") (emphasis added); *Familias Unidas Por La Educación v. El Paso Indep. Sch. Dist.*, No. EP-20-CV-170-DB, 2022 WL 2906505, at *3 (W.D. Tex. Jul. 22. 2022) ("Courts routinely reject untimely 'supplemental' expert testimony where the opinions are based upon information available prior to

[redacted] [redacted] [redacted] [redacted]

In light of these authorities, which the Government makes no effort to distinguish, Dr. George's admission that he expanded his analysis by addressing "additional variables and additional datapoints highlighted during his deposition" establishes that his supplement reflects new analysis or—at a minimum—improper bolstering of his initial regression. *See Aid for Women v. Foulston*, No. 03-1353-JTM, 2005 WL 6964192, at *3 (D. Kan. Jul. 14, 2005) (declining to permit Rule 26(e) supplementation where "[t]he supplemental report contains analyses controlling for many of the precise variables proposed by [the opposing party's expert] in his rebuttal report"); *see also MF Global Holdings, Ltd. v. Price WaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 572 (S.D.N.Y. 2017) (declining to permit supplement containing "additional analysis of trading data of European sovereign debt instruments that was available to [an expert] prior to submitting his initial expert report" notwithstanding its sponsor's argument that "this new analysis 'does not add anything new" to the "expert's original opinions"); *Familias Unidas Por La Educación*, 2022 WL 2906505, at *3 (striking supplemental report that "took [the original report's] analysis a step further" in an effort "to rebut the opposing party's criticisms") (citation omitted).

The Government's reliance on *Scott Timber* to avoid the result that supplementation is improper is misplaced. *Scott Timber* did not involve a correction to an expert's report under 26(e) but rather a plaintiff seeking to "split" topics originally intended to be presented in a single report between two experts, which did not prejudice the Government because the new opinion "introduce[d] no new topics or methodology to the case." *Scott Timber*, 93 Fed. Cl. at 227-28.

the deadline for expert disclosures and disclosure departs from or **expands upon** the original report in any material respects.") (cleaned up) (emphasis added). *Cochran v. Brinkmann Corp.*, No. 1:08-cv-1790-WSD, 2009 WL 4823858, at *5 (N.D. Ga. Dec. 9, 2009), (rejecting supplement by expert who after "conducting additional testing and having been deposed[,] discovered shortcomings in the opinions he offered (which led him to conduct even more testing)"), aff'd sub nom. *Cochran v. The Brinkmann Corp.*, 381 F. App'x 968 (11th Cir. 2010); *see also* Dkt. 183 at 21 n.16 (citing more authorities precluding the use of supplementation to bolster expert opinions).

*Scott Timber* thus does not give experts *carte blanche* to revise and bolster their testimony on all "topics" listed in their original reports as the Government suggests.[5]

Nor do the Government's affirmative mischaracterizations of Dr. George's supplemental report help its cause. Having repeatedly represented to Plaintiffs and this Court that it "intended to supplement his [Dr. George's] report as required under RCFC 26(a)(2)(E) and 26(e)(2)" (Dkt. 178 at 2), the Government mischaracterizes the record to minimize the importance of Dr. George's supplemental analysis and the obvious prejudice to Plaintiffs if it is permitted. Even though Dr. George's supplement includes different data points, a reclassification of some pre-existing data points, and a new regression model that generates new results, the Government now insists—contrary to its prior position that supplementation is "required under RCFC. . . 26(e)(2)"— that the analysis in Dr. George's supplemental report is "not material." Dkt. 192 at 2 ("the supplementation is not new or material"). The Government cannot have it both ways: either the initial report was "incomplete or incorrect" in "some material respect," *see* RCFC 26(e), or it wasn't. In either case, Dr. George's supplemental report should be excluded: if it isn't authorized under Rule 26(e), it is subject to exclusion as untimely under Rule 26(e).

3. The Government's Discussion of *NorthStar Vermont Yankee, LLC v. United States* is Irrelevant

Finally, rather than litigate this case, the Government relies on a years-old, irrelevant one in which it claims that different Entergy affiliates than those involved in these cases allegedly

[5] The Government's citations to *Science Applications International Corp.*, 169 Fed. Cl. at 673, and *Deseret Management Corp. v. United States*, 97 Fed. Cl. 272, 274 (2011), are likewise inapposite. *See* Dkt. 192 at 7 (citing cases). The Government relies on both cases for the uncontroversial proposition that supplements which offer new theories and opinions are properly excluded. *Id.* Entergy agrees, but there is no tension between these holdings and the numerous authorities Entergy cited, which hold that the use of supplemental reports to bolster expert conclusions or address an opposing party's arguments is impermissible.

[redacted]

offered supplemental expert analysis at trial. Dkt. 192 at 8-9; *see also* Dkt. 192, Ex. C. The Government provides no analysis as to why that prior action by other entities should have any impact on Plaintiffs' ability to object to Dr. George's supplement here. There is no dispute that the decision is not binding on this Court. Moreover, the Government's cursory discussion provides no basis to conclude that the facts in that prior case were similar to those here. One thing is certain: the Government did not put the Plaintiff's expert in *Vermont Yankee* at issue on a motion to amend its pleadings as it has done here. *Vermont Yankee* thus fails to save Dr. George's report from exclusion.

## III. STRIKING DR. GEORGE'S REPORT REMAINS THE APPROPRIATE REMEDY FOR THE GOVERNMENT'S DISCOVERY MISCONDUCT

Finally, the Government fails to carry its burden to show that the default sanction of exclusion should not apply. *See Zoltek Corp. v. United States*, 71 Fed. Cl. 160, 167 (2006) ("Circuit courts applying the federal rule have held that the sanction of exclusion is automatic and mandatory unless the party violating [Fed. R. Civ. P.] 26 shows that the violation was justified or harmless."). As the party seeking to avoid a sanction, the Government "bears the burden to demonstrate its failure was either substantially justified or harmless." *Science Applications Int'l Corp.*, 169 Fed. Cl. at 664 (citation modified).

When determining whether sanctions are appropriate, the Court may consider "(1) prejudice or surprise to the opposing party; (2) ability to cure that prejudice or surprise; (3) the importance of the challenged evidence; (4) the extent to which admitting the evidence would disrupt trial; (5) the non-disclosing party's explanation for their conduct; and (6) whether the party acted in bad faith or willfully." *Id.* (collecting cases). Because the Government fails to demonstrate that these factors support a showing that its nondisclosure was substantially justified or harmless, Dr. George's supplemental report should be stricken.

### A. The Government's Bad-Faith Conduct and Inadequate Explanation for its Conduct Warrant Exclusion of the Supplemental Report

There are clear indications that the Government has acted in bad faith and ample "credible evidence that the United States acted willfully to withhold Dr. George's supplemental report," supporting its exclusion. Dkt. 192 at 12.

The Government's failure to "request an extension" or "ask leave of court" prior to serving an untimely supplement provides evidence of bad-faith. *Dandy v. Ethicon Women's Health & Urology*, 579 F. Supp. 3d 625, 632 (D.N.J. 2022). The Federal Circuit has held that disobedience to a scheduling order *alone* can support a bad-faith finding. *See BearBox LLC v. Lancium LLC*, 125 F.4th 1101, 1116 (Fed. Cir. 2025) (affirming finding that "BearBox's disregard of the express terms of the Court's Scheduling Order" and failure to "seek leave of court to obtain consent from [the opposing party]" both "indicate[d] bad faith"). Accordingly, the Government's failure to abide by the Court's scheduling order, its failure to seek Entergy's consent (which the Government expressly denied seeking), and its refusal to seek leave from the Court all indicate bad faith. The Government's response—twisting its Rule 26(e) "duty" into an unlimited right to supplement at the time of its choosing, in the face of overwhelming contrary authority—further confirms that a bad-faith finding is appropriate.

The record also evidences that the Government acted willfully in failing to disclose Dr. George's supplemental report.

The Government's professed explanation for the timeline of events is both implausible and inexcusable. The Government would have the Court believe that Dr. George *sua sponte* decided to "double-check" his work, took three weeks to do so, and then announced his intent to supplement which the Government immediately relayed to Plaintiffs. *See* Dkt. 192 at 12. This seems unlikely. And even if it were the complete story, Dr. George delayed still further—until

[redacted]

September 18—to issue his supplement. The Government's failure to procure Dr. George's deposition transcript until August 26 means the Government's own inexcusable lack of diligence likely contributed to the delay. The Government's notice to Plaintiffs on August 25, 2026, that a supplemental report would be forthcoming after the close of expert discovery does not change the fact that it willfully withheld Dr. George's supplemental opinions until approximately six weeks after his deposition.

Additionally, the record reflects a consistent pattern of misrepresentation and obfuscation in connection with Dr. George's testimony, much of which appears designed to shield it from meaningful review:

- The Government misrepresented to Dr. George and to Plaintiffs that the data the Government provided for his analysis represented a full set of the "contract" prices for Holtec's HI-STORM FW casks, the type of casks at issue in this litigation. Dkt. 176, Ex. B at ¶ 39; *see also* Dkt. 176, Ex. A (Dep. of Glenn R. George, PhD) at 81:8-22.[6] Despite substantial obstacles, Plaintiffs to date have identified several gaps and inaccuracies in Dr. George's price data set. The Government now mischaracterizes additional prices in Dr. George's supplement (which prices the Government has always had) as "alternative" data points, Dkt. 192 at 7, when in fact, they were and are a necessary part of any purportedly "complete" data set.

[6] The Government's misrepresentation is particularly damning and merits holding the Government accountable, given that the Government simply handed this data to Dr. George for analysis without further inquiry as to its completeness. Dkt. 176, Ex. B at ¶ 39; *id.*, Ex. A (Deposition of Glenn R. George, PhD) at 81:7-11 Further, the Government has at all times had access to the full set of con-tracts and purchase prices for these casks, which the Government long resisted producing until Plaintiffs threatened to move to compel. To this day, Plaintiffs must rely on the Government's representation that a full set of this information has been produced in discovery, without a meaningful opportunity to validate this assertion.

[redacted]

- In its motion to stay, the Government stated: "Dr. George acknowledged that certain portions of his analysis were 'incomplete or incorrect,' and thus he intends to disclose 'additional or corrective information [that] has not otherwise been made known to the other parties during the discovery process or in writing.'" Dkt. 178 at 2 (alteration in original). The Government then filed its Response to Plaintiffs' Motion to Strike, stating that "all Dr. George has done [in the supplemental report] is show that his analyses and opinions remain exactly the same." Dkt. 192 at 7. These two statements cannot both be true; and their coexistence suggests that the Government invoked RCFC 26(e) in bad faith.

Especially when considered alongside the Government's repeated disregard for this Court's scheduling orders and refusal to seek consent or leave to file Dr. George's supplemental report, these misrepresentations more than adequately support a bad-faith finding requiring exclusion.

### B. Permitting the Supplemental Report Would Prejudice Plaintiffs

Notwithstanding its bad faith, the Government wrongly suggests it can avoid sanctions because Plaintiffs suffered no prejudice from its delay. The low bar for prejudice is met here. Courts have found prejudice where "Defendants' experts have already reviewed and responded to the [plaintiff's expert's] original report," where "[allowing] new opinions would result in expired deadlines being reopened, additional discovery, and delay," and where "Defendants have already relied upon the original expert reports in filing a motion for summary judgment." *Dandy*, 579 F. Supp. 3d at 632. All these factors are present here, given that (1) all Plaintiffs' experts have reviewed Dr. George's original reports; (2) the Government concedes that its supplement would create a need to reopen discovery for an additional deposition, Dkt. 192 at 10; (3) the Government relied upon Dr. George's initial opinion in its Motion for Leave to Amend its Answer, Dkt. 160, and Plaintiffs addressed it in their Response, Dkt. 175; and (4) Plaintiffs relied on Dr. George's opinions tied to his original report when preparing a detailed motion to exclude, Dkt. 176.

[redacted]

The Government's contention that Plaintiffs suffered no prejudice because it provided notice of Dr. George's supplemental report five days before the deadline for rebuttal testimony rings hollow. *Id.* at 9-10. To the contrary, the Government's last-minute disclosure unfairly forced Plaintiffs to choose between two bad options: file a motion for an extension of their rebuttal deadline based on a hypothetical supplement (with no guarantee of success), or alternatively, comply with that deadline and pursue motions practice to exclude the supplement, incurring legal fees in pursuit of this goal. Courts have recognized that dilemmas which force parties to "reevaluate [their] litigation strategy" can be a source of prejudice. *See Zoltek*, 71 Fed. Cl. at 169 (finding prejudice where delayed disclosure required Plaintiffs to "reevaluate [their] litigation strategy" and "force[d] Plaintiff to have to decide whether or not to redepose [a witness]").

Worse, the Government's argument wrongly assumes that its delay prejudiced Plaintiffs only to the extent it forced unfair choices related to their rebuttal experts. Not so. As detailed in Plaintiffs' motion to strike, the Government did not get around to serving Dr. George's Supplemental Report until *four days after* Entergy filed a motion to exclude Dr. George's presumptively complete testimony. *See* Dkt. 176; RCFC 26(a)(2). Preparing this motion required Plaintiffs to expend substantial resources, and Plaintiffs have been forced to continue expending resources to resist the Government's motion for a stay based largely on Dr. George's Supplemental Report. Dkt. 178 at 2 (discussing supplement in motion to stay). Moreover, the Government's improper supplement is likely to harm Entergy by delaying final adjudication of Plaintiffs' unopposed motion to exclude Dr. George's testimony (Dkt. 176), which was prepared based on Dr. George's original opinions and testimony. *See Dandy*, 579 F. Supp. 3d at 632.

Finally, now that discovery is closed, Plaintiffs suffer harm because they can no longer depose Dr. George about the supplemental report without reopening discovery and then filing their

[redacted]

own supplemental reports. "Courts regularly conclude that untimely productions after the close of discovery are not harmless," largely because there is "no way to cure the potential harm without re-opening fact or expert discovery." *Prakhin v. United States*, 164 Fed. Cl. 440, 453 (2023). As a result, there is no way for the Court to prevent Plaintiffs from suffering some prejudice, either in the form of a lost opportunity to depose an expert witness or in the form of costs and delays associated with reopening discovery and conducting more depositions, which further supports imposing exclusion as the default remedy.

### C. This Prejudice Cannot Be Cured by an Opportunity to Depose Dr. George

The Government's suggestion that simply permitting a deposition of Dr. George about his supplemental report will cure any prejudice is incorrect. *See* Dkt. 192 at 10. The Government ignores the need to supplement Plaintiffs' expert reports, which would likely prompt a Government request for additional depositions. In short, permitting Dr. George's supplemental report would essentially require a complete "do-over" of expert discovery that could have been avoided if the Government had given Dr. George a full set of contracts, or sought and obtained an extension from the Court. It chose to take neither step, and should not be permitted to foist the expense and delay caused by its decision on Plaintiffs.

Moreover, as detailed above, Dr. George's testimony has been put at issue in multiple motions, including by the Government in its Motion for Leave to Amend its Answer (Dkt. 160) and Motion to Stay (Dkt. 178). Changing Dr. George's opinions would disrupt briefing and generate additional delay and expense related to these motions that are otherwise ripe for decision and could need to be revisited in light of an additional deposition.

Allowing an additional deposition is not an effective remedy where, as here, an untimely disclosure comes when "discovery [is] nearly complete." *See Aid for Women*, 2005 WL 6964192, at *4. As one court explained, allowing further depositions after or near the close of discovery

"would effectively result in the reopening of discovery which effectively undermines the very reason for setting expert deadlines in a scheduling order." *Id.* "That result," in turn, would "lead[] to a procedure whereby experts submit 'preliminary' reports, followed by new 'supplemental' reports and the expert's final product is in flux up to the very day of trial," wreaking havoc with the Court's schedule and litigants' reasonable expectations. *Id.* An order striking Dr. George's supplemental report would avoid the unjust result of prejudicing Plaintiffs for justifiably relying on the Court-ordered schedule in formulating their litigation strategy.

Finally, the limited authority cited by the Government holds only that the prejudice associated with untimely expert disclosure can be "lessened"—not eliminated—if the court allows a subsequent deposition. *See* Dkt. 192 at 10-11 (citing *Deseret Mgmt. Corp. v. United States*, 97 Fed. Cl. 272, 275 (2011)). And the Government neglects to inform the Court that this holding was conditioned on an order requiring the Government to "bear [the] cost" of the plaintiff's "waste[d] time and resources in responding to defendant's original motion." *Deseret Mgmt. Corp.*, 97 Fed. Cl. at 275.[7]

For all these reasons, the Court should reject the half-measures the Government proposes to "cure" the prejudice it caused and hold that the Government cannot carry its burden on this factor. The Court should adopt the RCFC's default "cure" for nondisclosure: an order striking Dr.

[7] In this case, those costs would be substantial, including (at least) expenses and attorney's fees associated with (1) re-deposing Dr. George, (2) briefing the instant motion to strike, (3) opposing the Government's frivolous motion to stay based on Dr. George's supplement, (4) briefing Plaintiffs' motion to exclude Dr. George's testimony (including any additional briefing necessary to address the improper supplement on the merits), (5) commissioning additional reports from Plaintiffs' experts to address the improper Supplemental Report, (6) preparing for and defending any additional depositions of Plaintiffs' experts; and (7) preparing redactions and confidentiality designations for all these documents. The Court may also deem it appropriate to award an additional lump sum to compensate Plaintiffs for the direct financial harms the Government's strategy of delay has caused. See Dkt. 175 at 32–33 (discussing these harms).

George's supplemental report. Alternatively, the Court can moot the Parties' dispute over the supplement and cure all prejudice to Plaintiffs by granting Plaintiffs' unopposed Motion to Exclude Dr. George's Testimony (Dkt. 176).[8]

### D. Permitting the Supplemental Report Would Disrupt the Court's Schedule

Next, the Government argues that "Entergy has not made any showing of how Dr. George's supplemental report would disrupt the orderly and efficient trial in this case." Dkt. 192 at 11. This argument does nothing to help the Government, as Plaintiffs do not bear the burden on this or any other factor. *Science Applications Int'l Corp.*, 169 Fed. Cl. at 664. Accordingly, the question is not whether Plaintiffs have proven that the Government's late disclosure disrupts the Court's schedule (they have), but whether the Government has shown that it does not.

Caselaw is clear that court schedules are disrupted whenever an untimely supplement "would result in expired deadlines being reopened, additional discovery, and delay." *Dandy*, 579 F. Supp. 3d at 632. Allowing the Government to supplement Dr. George's opinions now would cause all three of these consequences, so this factor supports striking the supplemental report.

### E. The Government Makes No Showing Based on the Remaining Factors

Finally, the Government makes no argument on the importance of the challenged evidence. Accordingly, this factor does not support its claim that its delay was harmless or justified. *Science Applications Int'l Corp.*, 169 Fed. Cl. at 664.

## IV. CONCLUSION

For all the foregoing reasons, the Court should (1) disregard the Government's unauthorized reply in support of its motion to stay, (2) hold that Dr. George's supplemental report

---

[8] A party cannot seek to supplement an expert report that is not independently admissible. *See, e.g., Est. of Cape v. U.S.*, 2013 WL 4522933, at *5; *In re. Bear Stearns Companies, Inc. Securities, Derivatives, and ERISA Litig.*, 263 F. Supp. 3d at 452.

[redacted]

is untimely and not permitted under RCFC 26(e), and (3) hold that the Government has not shown that its violation of RCFC 26(a)'s expert disclosure requirements was "justified or harmless." As a result, Plaintiffs' motion to strike should be granted.

THIS the 15th day of October 2026.

Respectfully submitted,


/s/Charles E. Ross
Charles E. Ross
WISE CARTER CHILD & CARAWAY, P.A.
401 East Capitol Street, Suite 600
Jackson, MS 39201
P.O. Box 651
Jackson, MS 39205-0651
(601) 968-5500
cer@wisecarter.com
*Counsel of Record for Plaintiffs System Energy Resources, Inc., Cooperative Energy, a Mississippi electric cooperative f/k/a South Mississippi Electric Power Association, and System Fuels, Inc.*

/s/Robin F. Bromberg
Robin F. Bromberg
LANGLEY & BROMBERG LLC
2700 U.S. Highway 280, Suite 350E
Birmingham, Alabama 35223
(205) 783-5752
robin@langleybromberg.com
*Counsel of Record for Plaintiff Entergy Louisiana, LLC*

OF COUNSEL
Samuel O. Morris IV
ENTERGY SERVICES INC.
1340 Echelon Parkway
Jackson, MS 39213
(601) 368-5476
Smorri5@entergy.com

Eric B. Langley
LANGLEY & BROMBERG LLC
2700 U.S. Highway 280, Suite 350E
Birmingham, Alabama 35223
(205) 783-5751
eric@langleybromberg.com

Jennifer Quinn-Barabanov
David Marcou
STEPTOE, LLP
1330 Connecticut Avenue NW
Washington, DC 20036
202-429-3000
jquinnba@steptoe.com
dmarcou@steptoe.com

[redacted]

## CERTIFICATE OF SERVICE

Pursuant to Rule 5(d)(1)(A) of the Rules of the Court of Federal Claims, I, Charles E. Ross, counsel of record for Plaintiffs System Energy Resources, Inc., Cooperative Energy, a Mississippi electric cooperative f/k/a South Mississippi Electric Power Association, and System Fuels, Inc. (hereinafter, collectively, the "*SERI* Plaintiffs"), and I, Robin F. Bromberg, counsel of record for Entergy Louisiana, LLC (along with the *SERI* Plaintiffs*,* collectively, the "Plaintiffs") do hereby certify that we have this date caused to be served, via electronic correspondence, a true and correct copy of Plaintiffs' sealed Reply in Support of Cross Motion to Strike Supplemental Expert Report of Dr. Glenn George on the following parties in the above-styled and numbered consolidated causes and their counsel:

EVAN WISSER
Senior Trial Counsel
DANIEL FALKNOR
Trial Attorney
Commercial Litigation Branch
Civil Division
DEPARTMENT OF JUSTICE
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Telephone: 202-616-3682
Email: evan.wisser@usdoj.gov
*Attorneys for Defendant*

William M. Sullivan, Jr.
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, D.C. 20036
202-663-8027
Fax: 703-770-7901
wsullivan@pillsburylaw.com
*Attorney for Intervenor Holtec International*

THIS the 15th day of October 2026.

Respectfully submitted,

[redacted]

*/s/Charles E. Ross*
Charles E. Ross
**WISE CARTER CHILD & CARAWAY, P.A.**
401 East Capitol Street, Suite 600
Jackson, MS 39201
P.O. Box 651
Jackson, MS 39205-0651
Tel: (601) 968-5500
Fax: (601) 944-7738
cer@wisecarter.com
*Counsel of Record for Plaintiffs System Energy Resources, Inc., Cooperative Energy, a Mississippi electric cooperative f/k/a South Mississippi Electric Power Association, and System Fuels, Inc.*

*/s/Robin F. Bromberg*
Robin F. Bromberg
**LANGLEY & BROMBERG LLC**
2700 U.S. Highway 280, Suite 350E
Birmingham, Alabama 35223
(205) 783-5752
robin@langleybromberg.com
*Counsel of Record for Plaintiff Entergy Louisiana, LLC*